Cole, Ch. J.
i wtt.t.. proof-certmea,te. I. Tbe paper purporting to be tbe last will of John Latbam, Sr., deceased, was on tbe files of such papers, and in tbe proper custody of tbe clerk the county court of Boone county. It bad upon it the following indorsement, to wit:
“ State oe Iowa, •)
Boone county, j
“ On this 7th day of August, A. D., 1855, I, Reuben S. Clarke, clerk of the county court of said county, do hereby certify that tbe foregoing and above will and testament of John Latbam, deceased, was read in open court and approved by tbe county judge of said county.
“ Witness my hand and seal of said county court [Attest.'] hereto affixed, at Boonsboro, this day and
year above written.
“R. S. Clarke, OlerlcP
The will was duly recorded in the record books of the county court as the last will and testament of John *288 Latham, Sr. Original testimony was taken in this cause, proving that the paper was executed in due form by John Latham, Sr., when of sound mind,- as and for his last will and testament — indeed this fact is not controverted — and it was also shown that subsequent to the record of the will its provisions had been executed so far as practicable.
It is now insisted by appellant’s counsel that the will was not duly proved before the county court, and that the district court had no jurisdiction to receive orginal evidence to prove the will as in this case. Our statute- conferred original jurisdiction for the probate of wills upon the county court. It provided for the production and reading of the will in open court after the testator’s death (Revision, sections 2323, 2321); that, after being thus produced and read, a day should be fixed for proving it (section 2325); that such notice as the court directs should be given parties interested (section 2326); that after being proved, it, with the certificate thereof indorsed on it, should be recorded (section 2321); and that wills, when proved and allowed, having the certificate thereon indorsed, signed by the clerk and attested by the seal of the court, may be read in evidence without further proof (section 2332). There is no showing in this case that all these provisions were complied with by the county court allowing the probate of this will. That the court had general and original jurisdiction of the probate 'of wills is not denied. Having such general jurisdiction, and having exercised the same, its proceedings are not void when collaterally assailed, although the certificate may fail to show a compliance with all the directory provisions of the statute. The will had the certificate of allowance indorsed upon it, signed by the clerk and attested; it could, therefore, in the language of the statute, “ be read in evidence in all courts within this State without further proof.” The statute does not require the certificate to show a compliance with all the directory provisions of the statute, but only the fact of its proof or *289 allowance. There is no showing that the directory provisions were not followed. Since the will might properly be read in evidence upon the certificate alone, we need not inquire whether the jurisdiction of' the county court is exclusive, or whether the district court might hear original proof of its validity as a will so as to pass the title to property, etc., as was done in this case.
3_construe-positfon <rifDS" language. II. The testator, John Latham, Sr., died on the 10th day of July, 1855, leaving him surviving Nancy Latham, his wife, and Harrison Latham, Edmund Latham, Charlotte Myers, Eliza Jane Parker, John Latham, Jr., Laban Latham and Elizabeth Jane Benton, his only children — his daughter Toutha Ann Oswald, having died before him, leaving two children, George, Erancis and Solomon Oswald, grandchildren of the testator, who also survived him. His widow, Nancy Latham, died December 27, 1863 ; but, prior to her death, and subsequent to the death of John Latham, Sr., two of his children, Oharlotte Myers and Laban Latham, died, leaving children who are part of the defendants in this case, and are the sole appellants.
The testator, by the will in controversy, devised certain specific sums to certain of his children, and his real estate and some personal property to his wife during her natural life, etc., etc., and then made the following devise, upon the construction of which the second question in this case is made, to wit: “ All the rest, residue and remainder of my money and property I will and bequeath to all my children who are living, at the time of the death of Nancy Latham, my wife, to be divided equally between them, share and share alike.” The single question is, whether the children who aire living at the time of the death of Nancy Latham were .to have the property, or the children who were then living (when the will was made) were to home the property, to be divided at the time of the death of Nancy Latham.
By transposing the terms of the devise, we .have the *290 meaning as claimed by the appellants, as follows: I will and bequeath the rest, residue and remainder of my money and property to all my children who are living, to be divided among them equally, share and share alike, at the time of the death of Nancy Latham, my wife. But such a transposition of the language of a will, for the purpose of construction, will only be made by courts when it is necessary, in order to give effect to the certain meaning and purpose of the testator. 2 Pars, on Gonts. 543, and authorities cited in note h. There is no such certain meaning to be effectuated, rendering a transposition necessary or-proper in this case. Without such transposing, the construction of the devise is not difficult. It is limited to the children living at the time of the death of Nancy Latham; any other construction renders the words “who are living” meaningless, both in the devise as it stands in the will, and as it would stand if transposed as suggested by appellant’s counsel.
Affirmed.