NELLIE B. BELLAMY et al., Administratrices, Appellees, v. NELLIE B. BELLAMY et al., Appellees; S. A. COREY, Intervenor, Appellant.

**WILLS: Contradictory Devises.** The rule that, of two absolute devises in the same will, of the same property, to different persons, the first must stand and the last fall, can have no application when it is manifest that the language of the two apparently contradictory devises constitutes, in view of the entire will, but *one* devise to both parties jointly. So held as to an absolute devise, in equal shares, to testator's eight children, with this clause, to wit: *"except the share of Ethel Jones shall go to her and her children in being at the time of my death in common."*

*Appeal from Monroe District Court.*—SENECA CORNELL, Judge.

DECEMBER 14, 1918.

ACTION to construe a will. Opinion states the facts. Decree in the court below is against the construction placed on the will by the intervenor. Intervenor appeals.—*Affirmed.*

*J. C. Mabry,* for appellant.

*N. E. Kendall,* for appellees.

GAYNOR, J.—This action is brought by the administrators of the estate of Harvey W. Almack, for leave to sell certain real estate for the purpose of paying debts, and for a division of what remains of the proceeds, according to the terms of the will of the said Harvey W. Almack. S. A.

Corey intervened, claiming to be a creditor of one of the devisees in the will, to wit, Ethel Jones, and alleged that the said Ethel Jones, under the terms of the will, is entitled to an undivided one eighth of an undivided two thirds of the real estate. After the intervention was filed, it was stipulated that the rights of the parties depend upon a proper construction of the will.

It is contended by the intervenor, S. A. Corey, that the said Ethel Jones, as legatee under the will, took an absolute bequest of an undivided one eighth of an undivided two thirds of the real estate of which the testator died seized; that, by the terms of the will, she took the same share as the other children of the deceased, mentioned in Paragraph 3 of the will. On the other hand, it is contended by Ethel Jones and her children that she and her children took jointly an undivided one eighth of an undivided two thirds of the real estate; that the said Ethel Jones, by virtue of said bequest, took an equal share with each of her children in an undivided one eighth of the undivided two thirds. So it is apparent that, if intervenor succeeds, one eighth of two thirds of the real estate passed to Ethel Jones, and is subject to his judgment.. If the contention of Ethel Jones and her children prevails, then the intervenor is entitled to claim only one fourth of one eighth of two thirds of the real estate devised; for it is conceded that Ethel Jones had three children living at the time of the death of the testator, and these children are still living.

It is conceded that the widow mentioned in the will elected to take her distributive share, in lieu of the estate bequeathed to her in the will.

The first paragraph of the will provides for the payment of his debts. The second gives to his wife a life estate in all his property. The third, the one in controversy, is as follows:

"I will and devise all that portion of my estate remain-

ing at the death of my said wife to my beloved children, viz.:
Nellie B. Bellamy, Gertrude Grimes, Lora Rochelle, *Ethel Jones*, Harvey Willis Almack, Edna G. Almack, Roll Almack and Ida Barger, share and share alike, except the share of Ethel Jones shall go to her and her children in being at the time of my death in common." .

It is the claim of the intervenor that, under the first part of the bequest in this third paragraph of the will, Ethel Jones took the same share as the other children, to wit, an undivided one eighth of the two thirds remaining after the widow's distributive share was carved out; that what followed is inconsistent with this absolute bequest, and is, therefore, void for repugnancy. The claim of Ethel Jones and her children is that the will, taken as a whole, shows that it was the intention of the testator to vest in her and her children living at the time of his death, the one eighth mentioned in the first clause in common; and this intention must prevail.

The testator left eight children, and, at the time of his death, was the owner of this property. He had a right to dispose of it as he saw fit; and it follows logically that whatever disposition he has made of it in this will is binding upon his heirs and upon this court.

We start with the proposition that the intention of the testator is the controlling consideration, and this intention must be gathered from the will itself. The will itself is the only evidence before us of what he intended and what his purpose was in making a testamentary disposition of his property.

The intervenor invokes the rule that, when a testator makes a definite disposition of certain of his property to A, then, later in the same will, makes a definite disposition of the same property to B, the first disposition must prevail; that the second is repugnant to the first. It is apparent that, with such contradictory expressions of in-

tent, it would be impossible to know which of the two the testator intended should take the property. He so worded his will that it is impossible for the court to say, from the wording of the will, which of the parties he intended should be the recipient of his bounty. The courts, therefore, have said—and it has become a canon of construction—that the court will look to the first provision of the will, as expressing his intent: not for the purpose of defeating his intent, but for the purpose of finding it. This canon of construction has been long recognized and enforced by the courts, and it will be presumed that the testator knew this canon of construction, and that, in making the first bequest to A, it was his intention that A should be the recipient of his bounty, and not B; because he is presumed to know that, in the application of this rule of construction, the second is repugnant to the first, and the first must prevail. Therefore, when confronted with such a condition, the court says that it was his intention to make A the beneficiary of his bounty, and not B. No authority need be cited in support of this rule.

Again, it has been said that, where the will gives an absolute title to A, with a subsequent direction as to the disposition of whatever remains after the death of A, such subsequent direction will not affect the passing of such absolute title. Those holdings are simply to the effect that, where an absolute title is given by the will to A, to take effect on the death of the testator, then, upon the death of the testator, the will vests him with an absolute title, and the law fixes his rights under the title given—the right of alienation, the right of descent, the right of disposition by will, the right that any owner of property has in the property owned. Therefore, any attempt in any subsequent part of the will to destroy, limit, or defeat the title so given by the will, is said to be inconsistent with the disposition so made, and does not affect it. This is the rule in *Channell v.*

*Aldinger,* 121 Iowa 297; *Talbot v. Snodgrass,* 124 Iowa
681; *Alden v. Johnson,* 63 Iowa 124; *In re Will of Barrett,*
111 Iowa 570; *Bills v. Bills,* 80 Iowa 269; *Luckey v. Mc-
Cray,* 125 Iowa 691; *Canaday v. Baysinger,* 170 Iowa 414,
at page 419. In this last case, it was said:

"We might add that the intention of the testator must
always govern; but, where the testator has made two pro-
visions in his will, one of which is repugnant to the other,
both cannot stand, and the presumption is that the first
provision expresses the will of the testator, and the second,
being repugnant to that, must fall. So the court looks to
the first provision for the intent of the testator, and rejects
the second provision. This is done under the assumption
that the testator knew the rules governing the construction
of wills, and knew that, under the canons of construction,
the first provision must be held to have expressed his in-
tent, and that the second provision is nugatory."

This canon of construction is adopted, not for the pur-
pose of defeating the intent of the testator, but, by and
through its application, the intent of the testator is found,
as a matter of law. The intent must prevail, whether it be
gathered with or without repugnant clauses. The intent
must be gathered from the will; but where there are repug-
nant clauses, this canon of construction is used for the pur-
pose of fixing the intent. When the clear wording of the
will invests one with an *absolute title in fee,* that title, up-
on the death of the testator, becomes vested in the devisee.
It must be assumed that the intent of the testator was that
the title should vest in the one to whom the bequest is made,
and that title so vested carries with it all the rights, privi-
leges, and immunities which accompany the title. Any at-
tempt in the will later to regulate or control that which is
so definitely vested, affects that title devised,—either de-
stroys or limits it,—and is, therefore, inconsistent with the
devise. Both cannot stand.

It is important, therefore, at the very threshold of the inquiry, to determine what title the testator intended to devise by the instrument, and to whom. This intent must be sought for and found by taking the instrument, as it is said, "by the four corners," and giving to all parts of the instrument consideration. If the will itself clearly conveys to the mind the thought that it was not the intent of the testator to give the entire estate to A, but to A and B in equal parts, the intent will be given effect, though there be words in the first of the instrument that suggest the intent to give the entire estate to A. Upon the death of the testator, the title vests as directed by the will. When a definite title invests under the will, any subsequent provision of the will that would affect the title so vesting has been held inoperative, for the reason that the title given carries with it all that, under the law, belongs to the title bequeathed or conveyed. As said in *Law v. Douglass*, 107 Iowa 606:

"There are some things, however, which even a testator may not do, and which the courts are powerless to aid him in doing, however clearly his intentions may be expressed. He cannot create a fee with absolute power of disposal, and at the same time clog that power of alienation by limitations over to another; in other words, he cannot include provisions which are absolutely inconsistent in terms and meaning, and have all given force and effect."

When the law gives to one the power to select the objects of his bounty, and to make his benefactions effective to those who are the chosen objects of his bounty, the law will not indulge in any fine distinctions to defeat the purpose and intent to be accomplished, when he undertakes, through the instrumentality of a will, to select the objects of his bounty, and bestows his benefactions. We therefore look to the instrument, to see who the objects of the testator's bounty are, as selected by him. We look to the will to see what benefactions he bestowed upon the objects of

his bounty, and, having ascertained that from the will, his purpose and intent are recognized and enforced.

In preparing the first part of this will, the testator had in mind his eight children. He had in mind to divide his property among his eight children in equal parts. He had also in mind the thought that, as to his daughter. Ethel Jones, the eighth part created by the division in her favor should pass to her and her children living at the time of his death. That is what he says. His intent is gathered from what he says. We need make no application of the canons hereinbefore discussed, because the intent in the will itself is plain. These canons of construction are not used primarily for the purpose of determining what the testator intended, but only when that purpose cannot be determined from the will, because of repugnant clauses or repugnant conditions which, if permitted to stand, are so antagonistic that one destroys the other. But where the intent of the testator can be gathered from the will, if all can be harmonized so that the intent is made manifest in the will, that intent must be given force and effect in construing the will, even though that intent be inartificially expressed, and even though there be a seeming contradiction.

In this case, the first thought, after providing for his wife, is to provide for his children. They were eight in number. He desired, as he says in his will, that the estate remaining, after providing for his wife, should be divided equally among these children, except that the part or share of Ethel Jones "shall go to her and her children in being at the time of my death in common." His intent is manifest, that the share which, in the division of the property among his children, would go to Ethel, should go to Ethel and her children in common. To paraphrase the clause of the will in question, for the purpose of ascertaining the true intent of the testator, we would read it as follows:

"I will and devise all that portion of my estate re-

maining at the death of my wife to my beloved children (naming them). My intention, however, in making this division and bequest is that the share that would fall to Ethel under such division should go to her and her children in being at the time of my death, in common."

Upon the death of the testator, the share, under this will, passed to Ethel and her children in being at the time of the death of the testator, in common. No other construction would give effect to the wording of the will, and this was the construction placed upon it by the district court. We are satisfied with that construction, and the cause is—*Affirmed.*

Preston, C. J., Weaver and Stevens, JJ., concur.