IN RE WILL OF EDWARD RICHTER.

HENRY RICHTER et al., Appellees, v. CLARA RICHTER, Executrix, Appellant.

No. 40460.

JANUARY 20, 1931.

REHEARING DENIED APRIL 10, 1931.

*John C. Higgins,* for appellants.

*Thuenen & Thuenen,* for appellee.

ALBERT, J.—I.  Edward Richter died March 5, 1929, and on April 6, 1929, an order was entered, admitting his will to probate.  The material parts of the will, so far as this case is concerned, are:

"Know all men by these presents that we, Edward Richter and Clara Richter, husband and wife, County of Scott, State of Iowa, do hereby make, publish and declare the following as and for our joint last will and testament, hereby revoking any and all wills and codicils by either of us at any time heretofore made:"

Item 1 provides for the payment of all just debts.

Item 2 provides for a trust of $5,000 for the education of two sons of the makers of the will, and after the completion of such education, the balance of the trust fund is to revert to the survivor, under the will, "to be his or hers absolutely and forever."

Item 3 reads as follows:

"We give, devise and bequeath all the rest, residue and remainder of our respective estates to the survivor of us, to have and to hold the same in his or her own name and right forever."

Item 4.  "It is the will of each of us and we each do hereby direct that any shares of the capital stock of T. Richter's Sons Inc., owned by either of us at the time of our death, may be pur-

chased by Carl Richter and Henry Richter, brothers of the undersigned, Edward Richter, at the book value of said stock at the time of said purchase and the said Carl Richter and Henry Richter shall have the privilege of purchasing said stock from the estate of either of us at any time within one year from the date of the will of either of us is probated.''

Item 5 provides for the appointment of the surviving executor or executrix, as the case may be, without bond.

The claimants, Henry Richter and Carl Richter, filed their petition in probate court, alleging the above facts and further stating that the outstanding capital stock of said corporation at the time of the death of Edward Richter was 856 shares, at a par value of $100 per share, of which Edward Richter was the owner, at the time of his death, of 256¼ shares; and further alleging:

''That, on or about May 1, 1929, these petitioners elected to purchase the stock owned by said Edward Richter at the time of his death, as provided by said will, and offered to purchase said stock at the book value of said stock at the time of said offer of purchase, and tendered to Clara Richter, executrix, the sum of $106.25 per share for said stock, said sum being the book value thereof at the time of said offer to purchase.''

Attached to said petition as an exhibit is a statement of said corporation, showing the assets, liabilities, and surplus thereof.

They further allege in their petition that Clara Richter, executrix, continues to refuse to carry out the provisions of said will, and refuses to sell said stock to the petitioners, and that the petitioners are ready, willing, and desirous of purchasing said stock at the book value thereof as of the date of said offer to purchase. The prayer is that the court fix and determine the book value of said stock on May 1, 1929, and that the executrix be required to carry out the provisions of the will of Edward Richter, and transfer said stock to the petitioners on the payment of the book value of said stock, as fixed and determined by the court.

This petition was attacked by demurrer, which was overruled. The parties stood on the ruling of the court, and refused to plead further, and judgment was entered, as prayed in

the petition, fixing the value of the shares of stock at $107.22 each, and ordering the executrix, on the payment of the same, to transfer the same to the petitioners.

The first question raised under the demurrer is the petitioners' allegation that they offered to purchase, and tendered to the executrix the sum of $106.25 per share for said stock, said sum  being the book value thereof at the time of said offer to purchase; but the statement of assets and liabilities of the company, as attached to the petition, shows that the book value of said stock at the time was $107.22. We have the statement before us, and among the liabilities shown are:

| | |
|---|---|
| "Capital Stock, Preferred, | $58,000.00 |
| Capital stock, Common, | 85,600.00 |
| Surplus | 6,181.20" |

Appellant reaches her conclusion as to the value of this stock at $107.22 per share by assuming the common stock to be worth $85,600, to which she adds the surplus of $6,181.20, making a total of $91,781.20, and dividing this by the total shares of common stock, to wit, 856. She thus obtains a result of $107.22. She says, therefore, that the petition on its face shows that the value of this stock was $107.22. The mathematical calculation is correct, but the means and method by which this result was obtained do not seem to be warranted, under the record. We have no means of knowing whether this surplus of $6,181.20 is to be credited wholly to the common, or whether it is to be apportioned between the preferred and the common stock, or whether the surplus should be credited wholly to the preferred stock. The articles of incorporation and the by-laws are not before us, and we therefore have not the right to say where this surplus shall be credited, in determining the value of the common stock. This matter would probably be made clear on the trial of the case; but we take the record as we find it, and cannot say that the surplus should be credited wholly to the common stock, and thereby reach the conclusion that the value of the common stock was $107.22 per share.

The decisions of the various courts seem to be somewhat confusing in determining just what this phrase "book value" means, as will be discovered in the following cases: Gurley v. Wood-

bury, 177 N. C. 70 (97 S. E. 754) ; Elhard v. Rott, 36 N. D. 221 (162 N. W. 302) ; Jennemann v. Bucher, 186 Mo. App. 179 (171 S. W. 613) ; Succession of Warren, 162 La. 649 (110 So. 891) ; Cabble v. Cabble, 111 App. Div. 426 (97 N. Y. Supp. 773) ; Lane v. Barnard, 103 Misc. Rep. 707 (170 N. Y. Supp. 946).

Suffice to say, we cannot reach a conclusion from the statement before us that the book value of this stock was $107.22 per share, as claimed by the appellant. The finding and judgment of the court, having been entered after the appellant stood on the adverse ruling on the demurrer, cannot be considered by us in determining the correctness of the court's ruling on the demurrer.

II. The next question raised by the demurrer grows out of the construction of the will. It will be noted from Item 3  of the will that Mrs. Richter is given, devised, and bequeathed "all the rest, residue and remainder of our respective estates * * * to have and to hold the same in * * * her own name and right forever."

Item 4 specifies:

"It is the will of each of us and we each do hereby direct that any shares of the capital stock of T. Richter & Sons Inc., owned by either of us at the time of our death, may be purchased * * * at the book value * * *at any time within one year from the date the will of either of us is probated."

It is the claim of the appellant that Item 3 gives to the wife a fee title to this property, both real and personal, and that Item 4 is an attempt to limit or control said property after having given the fee in Item 3, and is therefore void. This is the troublesome question in the case. Counsel agree on the elementary proposition that the intent of the testator, gathered from the whole instrument, is controlling in the construction of a will. The diversity comes in the application of this general doctrine.

The will provides, first, for the creation of a trust of $5,000 for the education of the children, and after the completion of their education, whatever remained in the fund was to go back under the operative terms of the will "absolutely and forever." Item 3 gives to the survivor (the widow) a fee title to all of the rest, residue, and remainder of the property. If force and effect

is to be given to Item 4, then the widow did not acquire a complete title under Item 3, as her title would be limited and clogged by the provisions of Item 4. There is an apparent conflict, therefore, between Items 3 and 4 of the will. It is fundamental that the intent of the testator must be gathered from the entire will, and all parts therein must be construed and given force and effect, if possible, to determine what was the intent of the testator from the wording of the will itself. Experience and common sense have developed certain canons of construction to aid in determining the intent of the testator in a will, and in order to determine such intent, it is permissible to transpose words, expressions, or even sentences. 40 Cyc. 1401, Note 60, and cases there cited. We have recognized this doctrine in Latham v. Latham, 30 Iowa 294. In pursuance of this doctrine, it has been held that the residuary clause in a will is, in legal effect, the last clause of the will, regardless of its position. 40 Cyc. 1413. And it is also another rule that the residuary clause will be made to yield to a specifically inconsistent provision, especially if the latter is subsequent to the residuary. Ralls v. Johnson, 200 Ala. 178 (75 So. 926, 928).

I Redfield on the Law of Wills (4th Ed.) 445, says:

"But courts will, if possible, adopt such construction as will uphold all the provisions of the will. And in carrying this purpose into effect, it is permissible to resort to any reasonable intendment. And, if necessary, the relative order of devises or bequests will be reversed, as where an estate is first given in fee to A, and then for life to B. * * * The rule seems to be pretty clearly established that, where the testator makes a general devise, or bequest, which would include the whole of his estate, and in other portions of the will makes specific dispositions, these shall be regarded as explanations, or exceptions, out of the general disposition; and it will not be important, in such case, whether the general or the special provisions come first in order, since, in either case, the general disposition will be regarded as made subject to the more specific ones."

Schouler on Wills (3d Ed.), 526, says:

"But the mere position of particular sentences or clauses is by no means conclusive as against the real sense of the whole will; while, at the same time, position is a circumstance of

weight, where some general expression of the will yields, as it should, to a clear and specific provision found elsewhere.'' In Note 5, page 526, he says: ''A general residuary clause may be made to yield to a specific inconsistent provision, especially if the latter be subsequent in recital'' (citing Estate of Markle, 187 Pa. St. 639; Rogers v. Rogers, 49 N. J. Eq. 98).

See, also, Ralls v. Johnson, 200 Ala. 178 (75 So. 926, 928).

The same result has been reached by a different method in our case of Covert v. Sebern, 73 Iowa 564, where we said, in a case of repugnancy such as involved in this case, that the law provides a plain rule to be followed in such cases, which holds that the last clause, being the last expression of the testator's intent, must be enforced, and the others disregarded. Also, in Armstrong v. Crapo, 72 Iowa 604, we recognized the same rule; also in In re Estate of Freeman, 146 Iowa 38.

The terms ''rest,'' ''residue,'' and ''remainder'' of an estate are usually and ordinarily understood as meaning that part of the estate which is left after all of the other provisions of the will have been satisfied. The intent of this testator is quite apparent, and we think is fully determined, under these rules, to be that while, in general terms, the testator gave the wife ''the rest, residue, and remainder,'' this item of the will should be transposed to the end of the will, and by so doing the intent of the testator is fully accomplished. Further than this, the wife, in case the plaintiffs herein exercised their option, gets the proceeds of the sale of this stock in place of the stock itself, and we think she fully understood this to be the purpose, by reason of the terms of the mutual will itself; for, so far as the will is an expression on her part, Item 4, above set out, reads: ''It is the will of each of us and we each do hereby direct that any shares of the capital stock of T. Richter & Sons Inc., owned by either of us at the time of our death, may be purchased,'' etc. Under this interpretation of the will, we think there is no question that the plaintiffs were given the right, under this will, to purchase the stock under the terms therein provided.

The appellant further insists, however, that a different rule governs personal property than governs real estate, and she argues that this must be so because the title to the personal property vests in the executrix, while that of the real estate vests immediately in the beneficiaries under the will. This is a

distinction which we are unable to make, in the case before us. We have read all of the cases cited by the appellant on this proposition, and are unable to find one where the rule applies differently to personal property than to real property, and we are unable to see any reason why a different rule should prevail in the two cases. The result of this holding is that, under the terms of the will, the two brothers have the right to purchase this stock on compliance with the provisions of the will in relation thereto. Whether or not the amount tendered was a strict compliance with the provisions of the will was a fact question, to be decided under evidence to be submitted in the case. The plaintiffs in their petition allege that the book value of the stock was $106.25 per share. As heretofore explained, we cannot see that this is incorrect, and the demurrer, therefore, admits the correctness of this allegation for its purposes; therefore, these allegations were not vulnerable to the demurrer.

Appellant contends that the contents of Item 4 of the will are wholly precatory, and therefore void. We cannot accede to this claim, but hold that the specific right is given, under the fourth item of the will, to these two brothers, to purchase the stock under the conditions therein provided.

As to the construction of the will, the interpretation we put upon the same corresponds with the contention of the plaintiffs, and therefore the demurrer was not good, and the court properly overruled the same.—*Affirmed.*

All the justices concur.