IN RE ESTATE OF FRANK HELLMAN.

LEWIS II. OLSON et al., Appellants; A. J. STOLTEBEN et al., Appellees.

No. 43237.

MARCH 17, 1936.

Ed. C. Tschudi, and B. J. Price, for appellants.

John E. Mulroney and D. M. Kelleher, for appellees.

HAMILTON, J.—On May 4, 1913, Anna C. Hellman executed a will, and, after making numerous specific bequests, concludes with a residuary clause as follows:

"9. All the balance of my property of all kinds I give, devise and bequeath to my beloved husband, Frank Hellman and appoint him executor of this my last will without bond. It is my wish that he have full control of my property, the free use thereof, power to convey and sell all real estate, invest the proceeds, and at his death that portion of my estate herein given him which was mine by inheritance and additions thereto shall be by my husband divided equally among my four sisters, Mrs. Fred Tschudi, Mrs. Michael Zwack, Mrs. L. J. Baumhover and Sister Cassilda (formerly Emily Heeb)."

On June 22, 1913, she executed a codicil; that part thereof which is material to the issues in this case being contained in the following paragraph:

"2. I revoke fully and absolutely the bequest and devise of Clause Nine to my sister Emily, now known as Sister Cassilda and no part of my estate shall go to her. One Thousand Dollars of an undivided fourth of the bequests or share of my property that in Clause Nine I have requested my husband at his death to distribute is hereby given to Lewis H. Olson and the balance of said one-fourth I ask my husband to distribute equally to my sisters Mrs. Tschudi, Mrs. Zwack and Mrs. Baumhover in addition to the amounts already named for them in said Clause Nine of my said will, but nothing in this clause of this codicil shall limit or restrict the provisions of Clause Nine of my will devising and bequeathing the property therein named to my husband, Frank Hellman. He understands my wishes as herein set forth."

Anna C. Hellman died on or about July 6, 1913, leaving her husband, Frank Hellman, surviving. The will and codicil were

duly admitted to probate, and the husband qualified as executor on September 11, 1913, and on the 12th day of September, 1913, gave notice of his appointment and filed proof thereof as provided by law. The first contest over this will was between the executor and the state treasurer as to whether or not under the provisions of paragraph 9 any part of this estate passed to the sisters as collateral heirs and was subject to succession tax. In order to determine this, the court of necessity was compelled to construe and interpret paragraph 9 of this will. The issue was clearly drawn and decided adversely to the treasurer's contention; the court holding that the sisters took nothing and hence no tax was due.

Frank Hellman died testate on or about the 6th of September, 1933, and in his will, disregarding the wishes of his wife, made no provision for the persons named in paragraph 9 of the will of Anna C. Hellman. In due time appellants filed their claims in controversy, alleging that the sum of $12,000, which was included in a total of $26,000 which Frank Hellman received from the estate of his wife, was money inherited by her from her mother, and that by the provisions of her last will and testament and codicil such portion passed to Frank Hellman in trust for said appellants, and they pray for an accounting by the executors of the estate of Frank Hellman of said $12,000, together with the additions and increments thereof as a trust fund for the use and benefit of said claimants. These claims were first attacked by demurrer, setting up that by the provisions of the will, a copy of which was attached to the claims, no trust was created, the language being merely the expression of a wish or desire, or precatory in character and repugnant to the other provisions of the will. This demurrer was submitted to the court, and the court's ruling appears in the abstract, and this paragraph 9 and codicil were again construed, and the demurrer was overruled; the court holding that the husband did not take an absolute estate, but, as to the portion inherited by her from her mother, the language in paragraph 9, considered in connection with paragraph 2 of the codicil, amounted to a bequest to the sisters. Thereafter the executors of the estate of Frank Hellman filed their answer, and the case was tried to the court upon a stipulation of facts, and the court, construing the same paragraph 9, held that by the first sentence thereof an absolute estate was given to the husband, and that all the language following

was precatory in character, and expressive of nothing more than the wish or desire of the wife as to how the husband should distribute that portion of the estate bequeathed to him which she had inherited from her mother, and in no way limited the absolute estate to the husband, and that the husband was at liberty to disregard the wishes of his wife if he saw fit.

Hence we see that three times the district court has construed the provisions of this will, different judges presiding, with the results heretofore indicated. The parties are represented in this court by able counsel; on the one hand appellants contending that there was a trust created, and on the other appellees contending there was an absolute estate to the husband. Counsel on both sides, sincere in their contentions, have cited authority to this court apparently supporting their respective contentions. Under these circumstances, to say that the language of this will is clear and free from doubt as to its meaning would be somewhat presumptuous.

Precedents are of little value in matters involving the construction of wills. This is due to the fact that in all cases of this character the intention of the testator must govern, and, in expressing their intention, different individuals use different language. It is because of this variance in expression that ambiguity arises, and resort to construction is compelled in order to arrive at the testator's intention. There are many well-known canons of construction which have often been stated and need not be again repeated, but see Phillips v. Phillips, 217 Iowa 374, 251 N. W. 511; In re Estate of Thomas, 220 Iowa 50, 261 N. W. 622; In re Estate of Flannery, 221 Iowa 265, 264 N. W. 68; In re Will of Richter, 212 Iowa 38, 234 N. W. 285; Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261.

That the testatrix used apt language to describe a fee-simple title or absolute estate in the first sentence of paragraph 9 cannot be questioned. She says:

"All the balance of my property of all kinds I give, devise and bequeath to my beloved husband, Frank Hellman, and appoint him executor of this my last will without bond."

The old familiar stock phrases of the common law, such as "in fee simple," "absolutely," "to have and to hold forever," do not appear, but words of this character are unnecessary in conveying the fee-simple title. All that follows this statement is

preceded by the words, "It is my wish," and it is in the language following the word "wish" that we must look for words of limitation on the previous unlimited devise and bequest to the husband. It will be noticed that there are no words of gift or grant to her sisters in this paragraph.

Stripped of the part that applies to the husband's bequest, it reads as follows:

"It is my wish * * * at his death that portion of my estate *herein given him* which was mine by inheritance and additions thereto shall be *by my husband* divided equally among my four sisters," naming them.

Desiring for some reason to change her expressed wish in reference to her sister, Emily, referred to also as Sister Cassilda, she makes a codicil, in which she says that she revokes

"fully and absolutely the bequest and devise of Clause Nine to my sister Emily, now known as Sister Cassilda and no part of my estate shall go to her."

So this eliminates Sister Cassilda. She then goes on to say that

"One Thousand Dollars of an undivided fourth of the bequests or share of my property that in Clause Nine I have *requested* my husband at his death to distribute is hereby given to Lewis H. Olson and the balance of said one-fourth *I ask* my husband to distribute equally to my sisters Mrs. Tschudi, Mrs. Zwack and Mrs. Baumhover in addition to the amounts already named for them in said Clause Nine of my said will."

If you stop at this point, there might be found a limitation in favor of Lewis H. Olson as to $1,000 in these words, "is hereby given to Lewis H. Olson." But, to make sure that nothing in her codicil should limit the estate which she had given to her husband, she says:

"But *nothing* in this clause of this codicil *shall limit or restrict* the provisions of Clause Nine of my will *devising and bequeathing* the property therein named to my husband, Frank Hellman. He understands *my wishes* as herein set forth."

We have carefully read the numerous cases cited in the briefs of the litigants in search of a will among the many which

is most nearly parallel to the will in question, and as we view the matter the case In re Final Report of Campbell, 209 Iowa 954, 229 N. W. 247, is most nearly in point. The will involved in this case in the first clause provides for the payment of all just debts, etc. Item 2:

"To my beloved wife, Elizabeth A. Taylor, I hereby devise, give and bequeath all of my property, both real and personal which I may own or be entitled to at my decease."

It will be noticed that the same words of gift and grant are used, and the term "all of my property of all kinds" is of the same import in both instruments.

In paragraph 3 of the will in this case the testator says:

"I make the above bequest knowing that my beloved wife, Elizabeth A. Taylor, will see that all the property both real and personal which she may own at the time of her decease shall go to my beloved sons and daughters."

This paragraph expresses unlimited confidence in the wife to whom he has just devised his entire estate. This corresponds to the last statement in the codicil of Mrs. Hellman's will, where she says in speaking of her husband: "He understands my wishes as herein set forth." In paragraph 4 of this will we find a clause almost identical with the precatory language used in paragraph 9 of Mrs. Hellman's will. It reads:

"*It is my wish* that whenever a certain real estate mortgage of $15,000 now owned by me has been paid to my beloved wife hereinbefore named that she divide the amount among my beloved sons and daughters share and share alike."

It should be noticed that there are no words expressly designating the character of the estate intended in paragraph 2 of this will in the Campbell case. The word "absolute" is not there. In this Campbell case Justice Albert separates and classifies the cases of various courts wherein the word "wish" has been considered in connection with the question of whether or not a trust was created, citing a long list of cases where it is held to create a trust and an equally large list in which it is held not to create a trust. He then expresses the view of this court in the following pronouncement:

558

"A review of these cases leads to the suggestion first above made, that whether or not the word 'wish' is to be construed as creating a trust depends wholly upon its place in the will and its relation to the context thereof.

"Generally speaking, a wish is a wish, and nothing more, unless the testator used it in such a way as to indicate a different intention. The whole context of this will shows that this mortgage was to pass to the wife. She took complete title thereto, under the second paragraph of the will, and the fourth paragraph recognized that she was to receive the same. In other words, there was no thought in the mind of the testator that the executor should have anything to do with this mortgage. The wife was to have the mortgage, and when it was due, she was to receive the proceeds thereof. This much is certain.

"The testator, by Clause 4 of the will, expresses a 'wish' that, after the wife has received the proceeds thereof, she shall distribute such proceeds, share and share alike, among the children. Does this indicate that the intention of the testator was that she should receive said mortgage and hold the same, and that, when the same was cashed, she was then bound to divide the proceeds among these eight children? We do not think that this was his intention. The second paragraph shows, without doubt, that he intended her to have all of the property. The third paragraph is simply an expression of confidence in the fairness of the wife, and in pursuance thereof, he 'wishes' that she would distribute the proceeds of this mortgage, when she received it, in cash among these children. We have had something of a similar question before us in the past history of this court, but the only case that squarely touches the question of the use of the word 'wish' is Bradford v. Martin, 199 Iowa 250, 255, 201 N. W. 574, 576. We there said:

" 'We deem the use of the word "wish" in these bequests purely precatory; but if not so, it creates a repugnance, as against the clause giving a fee simple title to the wife, and therefore is void.'

"We have the same situation in the present case as existed in the. Bradford case. If the fourth section of the will in the instant case should be held to create a trust estate, it would be repugnant to the second section of the will, which gave to the wife complete title to all of the property of the deceased."

■■■ The prevailing view, according to the weight of authority with reference to precatory trusts, seems to be:

"According to the more modern and prevailing view, however, precatory words of themselves are insufficient to create such a trust [express trust]. The doctrine of precatory trusts is not to be extended. In order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner." 69 C. J. 717.

"Such words will not be deemed to have created a trust, unless testator intended to impose an imperative obligation and to exclude the exercise of discretion by the person to whom the precatory words are addressed." 69 C. J. 719. See, also, extended note in 49 A. L. R. p. 26.

We conclude that the trial court was correct in holding that the language was insufficient to create a trust; that the husband took the fee-simple title to the entire residuary estate, and that the other language amounted to nothing more than the expression of a wish or desire as to what disposition she wished her husband to make of that portion thereof which she had inherited from her mother's estate, and, there being no imperative obligation expressed or, by reasonable intendment, imposed. upon the husband to follow such wish or request, the matter was left wholly within his discretion. Indeed, the testatrix, to make sure that what she had said would not limit his estate, expressly states in the last expression of her codicil that nothing contained in the codicil should limit or restrict the provisions of clause 9 of her will wherein she had devised and bequeathed the property to her husband, stating, "He understands my wishes." There is nothing strained or unnatural in the construction thus placed upon this will. These people were without children. It was perfectly natural that their first solicitude and concern should be for each other, and what was more natural, when there were no children involved, than for her to make her husband the sole residuary beneficiary of her estate, unhampered by any limitations whatsoever, and to then express to him her wishes as to how he should dispose of that portion thereof which she had inherited

from her own mother? Viewed in this light, effect is given to the entire will, and we believe this construction is in accordance with the expressed intent of the testatrix. See as supporting the conclusion reached: Hambel v. Hambel, 109 Iowa 459, 80 N. W. 528; Bellamy v. Bellamy, 184 Iowa 1193, 169 N. W. 621; Law v. Douglass, 107 Iowa 606, 78 N. W. 212; Canaday v. Baysinger, 170 Iowa 414, 418, 152 N. W. 562; Bradford v. Martin, 199 Iowa 250, 201 N. W. 574.

▐█▌ Other matters of defense, namely, that there was not sufficient identification of the subject-matter of the trust; that there was a former adjudication of this matter; and that the cause of action was barred by the statute of limitations, not having been passed upon by the lower court, will be given no consideration here, except to say that under this record there was no attempt to identify the subject-matter of the trust, no attempt to show whether the funds which were inherited by Anna C. Hellman from her mother were in existence at the time of Anna's death. The evidence shows that the mother died prior to 1899. How much, if any, of the estate inherited from the mother was still in existence at Anna's death is not pointed out by the evidence.

▐█▌ On the issue of former adjudication, the record reveals the fact that, when the collateral inheritance tax matter was involved, this identical provision of the will came up before the court on a hearing on the final report with all the parties in court, including these appellants, the administrator Frank Hellman openly asserting in the pleadings filed that no part of the property passed to collateral heirs under paragraph 9 of this will and that he was the sole beneficiary thereunder, the Treasurer of State contending just the opposite, the appellants acquiescing and not objecting to the position taken by the executor. The court passed on the question, and specifically found that no portion of the property passed to collateral heirs under the provisions of paragraph 9, and hence no tax was due. Frank Hellman distributed the entire residuary estate to himself individually, assigned the mortgages to himself individually, and the assignments thereof were recorded. Of all this appellants had personal knowledge, and there is no evidence in the record showing that Frank Hellman ever by act, word, or conduct did aught to indicate that he was holding the said property or any portion thereof as trustee. That his conduct and actions amounted to a repudia-

tion of said trust would seem clear. It further appears from the record that these appellants, with full knowledge of the facts, never at any time challenged Hellman's right to hold said property in his individual capacity, prior to the death of Frank Hellman. The general rule, of course, is that length of time is no bar to a trust clearly established, and the statute of limitation is not applicable, because the possession of the trustee is presumed to be the possession of his cestui que trust, but the rule is different where there is a repudiation by the trustee of the trust relationship and an avowed, open, notorious claim of the trustee in relation to the subject-matter of the trust adverse to the interests of the cestui que trust, of which said beneficiaries have notice and knowledge. Under such circumstances, the possession of the trustee of the trust property becomes hostile, and the statute of limitations is set in motion.

These matters are all ably argued by counsel for appellees in support of their contention in the lower court, and we can see no escape from the fact that all of these defenses are well taken, but, in view of the fact that these matters were not passed upon by the lower court, the same are not determined by this court.

For reasons heretofore set forth, the judgment of the lower court must be and is affirmed.—Affirmed.

DONEGAN, C, J., and ANDERSON, STIGER, ALBERT, PARSONS, and RICHARDS, JJ., concur.

MITCHELL, J., takes no part.