IN RE ESTATE OF E. C. EDWARDS.

LOIS CATLIN and ROBERT CATLIN, Appellants, v. ALICE EDWARDS and ALICE EDWARDS, Executrix, Appellee.

No. 45771.

Pasley & Pasley, for appellants.

W. H. Soper and D. W. Dickinson, for appellee.

BLISS, J.—E. C. Edwards died testate January 31, 1934, leaving a widow, Alice Edwards, the appellee, a daughter, Lois Catlin, by an earlier marriage, and a grandson, Robert Catlin, son of Lois. The daughter and the grandson are the appellants. There was no issue of the marriage of the testator and Alice Edwards. In addition to some personal property, the testator, at the time of his death, owned four hundred acres of land in Hardin County, Iowa, and a residence property in the town of Alden. His Will was probated and his widow was appointed executrix, and qualified as such.

Since a suit for the construction of a Will can be maintained only if its meaning is uncertain or ambiguous (Anderson v. Meier, 227 Iowa 38, 41, 287 N. W. 250; Anderson v. Conklin, 229 Iowa 232, 235, 294 N. W. 339; Ransom v. Mellor, 230 Iowa 451, 454, 297 N. W. 861; First M. E. Church v. Hull, 225 Iowa 306, 311, 280 N. W. 531), and the only purpose of the judicial construction of any testamentary disposition of property is to ascertain and give effect to the intent of the testator, if this can be done without violating public policy or any rule of law (Guilford v. Gardner, 180 Iowa 1210, 1220, 162 N. W. 261; In re Estate of Huston, 224 Iowa 420, 425, 275 N. W. 149; Brown v. Brown, 213 Iowa 998, 1000, 240 N. W. 910; In re Clifton's Estate, 207 Iowa 71, 76, 218 N. W. 926; 19 Iowa Digest, Wills,

Key No. 439), and since that intention is to be gathered from the Will as a whole, reading each provision in the light of every other provision, giving effect to each and every part, if possible (Benham v. Turkle, 173 Iowa 598, 602, 603, 153 N. W. 1017; Bellamy v. Bellamy, 184 Iowa 1193, 1195, 1197, 169 N. W. 621; In re Estate of Pottorff, 216 Iowa 1370, 1373, 250 N. W. 463; Luitjens v. Larson, 222 Iowa 1320, 1321, 271 N. W. 239; Bradford v. Martin, 199 Iowa 250, 201 N. W. 574; In re Will of Richter, 212 Iowa 38, 43, 234 N. W. 285; Blackford v. Anderson, 226 Iowa 1138, 1172, 286 N. W. 735; Starr v. Newman, 225 Iowa 901, 904, 281 N. W. 830; Jones v. Coon, 229 Iowa 756, 759, 295 N. W. 162; DeKoster v. Roggen, 229 Iowa 938, 942, 295 N. W. 440; see 19 Iowa Digest, Wills, Key No. 450), we set out the material parts of the decedent's Will:

"Par. 1. I give, bequeath and devise all of the property of which I die possessed or seized, to L. A. Watson as my executor, in trust for the purposes hereinafter stated, and I hereby authorize and empower my said executor to collect all moneys and credits due me at the time of my death and to sell and dispose of all other personal property of every kind and nature, of which I die seized (except household goods) as soon after my death as he shall deem it expedient to do so, and out of the proceeds thereof I direct that all my just debts and the expenses of my burial be paid, and the residue thereof to be disposed of as follows:

"Par. 2. Subject to Paragraph One I direct that my executor distribute the balance of the assets from the sale of the personal property and the moneys and credits coming into his hands as follows: that he deliver to my beloved wife, Alice Edwards one-third of said sum and that he deliver to my beloved daughter, Lois Catlin two-thirds of said sum.

"Par. 3. I hereby direct that my executor hold and keep the North Half of Section Fifteen and the North Half of the South West Quarter of Section Fifteen, Twp. Eighty Eight North Range Twenty Two West of the Fifth P. M. Hardin County, Iowa, until my beloved grandson, Robert Catlin shall arrive at the age of twenty-one years and that he rent said real estate until said child arrives at the age of twenty-one years, at

such times and prices and upon such terms as to him shall seem for the best interest of all parties concerned and out of the rentals therefrom that he first pay all taxes of every kind and nature assessed against the estate and other sums which may become a lien against the property belonging to the estate and that he make such improvements upon said described land as he shall deem necessary for keeping the buildings and land in tenantable condition and pay for the same out of the rentals thereof and to pay the cost of keeping the buildings on said premises insured at all times in a reasonable sum.

"Par. 4. Subject to the foregoing paragraphs I direct that my executor pay the net proceeds remaining in his hands from the rentals of the above described farm, one-third to my beloved wife, Alice Edwards, and two-thirds to my beloved daughter, Lois Catlin as soon after the rents are collected as to him shall be deemed advisable.

"Par. 5. I direct that my executor hold and keep Lot Six in Block Four in the Original Plat of Alden, Hardin County, Iowa, and all household goods of which I die seized for the use and occupancy of my beloved wife, Alice Edwards so long as she shall live and that the taxes and upkeep of said premises and the cost of keeping the buildings insured in a reasonable sum be paid by my executor out of the income from my estate.

"Par. 6. I direct that my executor shall at the time my grandson, Robert Catlin should arrive at the age of twenty-one years old or as soon thereafter as may be, sell the farm hereinbefore described owned by me at the time of my death upon such terms and for such prices as to him shall seem for the best interests of all parties concerned and out of the proceeds thereof first pay all expenses therewith and divide the balance of the proceeds one-third to my beloved wife, Alice Edwards and two-thirds to my beloved daughter, Lois Catlin.

"Par. 7. Whereas my beloved wife, Alice Edwards and I have no issue it is my desire that whatever property is held by my wife from my estate descend to my beloved grandson, Robert Catlin. My beloved wife has been a dutiful and loving wife, our married life has been of short duration, the estate which I possess was created and established by me prior to our marriage, I do not wish to deprive her of her legal interests

in my estate, I have heretofore waived any and all rights to any interest which I may have had in and to any inheritance she may have been entitled to, and as a matter of courtesy to me I ask that she leave at her demise to my beloved grandson heretofore named whatever property she may have which she received from my estate.''

 As will be noted, there was no residuary clause in the Will. Neither was there any disposition of the residence property or the household goods, after their life use by the widow, unless, as claimed by the petitioners, they became the property of the grandson under paragraph seven of the Will.

The widow elected to take under the Will. The petition for the construction of the Will was filed in probate. To this petition, the widow and executrix filed a special appearance alleging that jurisdiction to construe a Will lies in the district court on the equity side rather than on the probate side. All parties having consented, the cause was transferred to equity.

The petition alleged: The relationship of the parties; that the grandson had attained his majority, and the farm had not been, but should be, sold, and the proceeds divided; that there was some difference of opinion as to the construction of the Will; and that it should be taken by its four corners, and be construed to carry out the intentions of the testator; that under paragraph seven of the Will, Alice Edwards was to receive one third of the proceeds of the sale of the farm to use for the upkeep of the residence property, and that upon her death the balance of this one third, and the residence property, with the household goods should go to Robert Catlin, as residuary property. Relief was prayed in conformity with the allegations.

The grounds for dismissal as alleged in defendant's motion were in substance that: The first paragraph of the Will devised all of the property to the executor in trust, and the subsequent paragraphs, down to number seven, were specific directions governing the trust; paragraph seven contained only a precatory request to the widow as devisee, and was not a devise to the grandson; the Will gave a clear and unequivocal bequest to the widow; and, there was no ambiguity in the Will requiring construction.

The trial court found that all property bequeathed to the widow in paragraphs one, two, four, and six of the Will, was given to her absolutely and unconditionally to be her own without qualification, and that the residence property and household goods, described in paragraph five, were given to her for use during her life. The court further found that paragraph seven was merely the expression of a wish on the part of the testator, and that if it could be construed as a disposition to the grandson, of any property bequeathed to the widow in the preceding paragraphs of the Will, it was repugnant to and inconsistent with such absolute bequests, and must, therefore, fall. These findings were expressly made a part of the decree of the court with the same force and effect as though set out in the decretal part thereof. The court also decreed that the grandson, Robert Catlin, took nothing whatsoever under the Will. We are in full accord with the findings and decree of the able trial court.

Counsel for the appellants have ably and forcefully presented their views. They state their position thus:

"The primary proposition to be determined by this Court is whether or not the words in paragraph 2 '—deliver—', the words in paragraph 4 '—pay—', and the words in paragraph 6 '—divide—' are an absolute gift to Alice Edwards, or whether the words in paragraph 7 '—it is my desire that whatever property is held by my wife from my Estate descend to my beloved grandson, Robert Catlin.', modify said gift and grant the remainder to Robert Catlin in fee simple. The petitioners respectfully urge the rule established by this Court in a definite series of cases which state that where language in a will, standing alone, might be considered sufficient to create an Estate in fee, yet, if not couched in absolute terms, and by giving effect to other parts of the will, may be so modified as to limit or qualify the Estate originally apparently created."

In support of their view, they cite the following authorities: Boekemier v. Boekemier, 157 Iowa 372, 138 N. W. 493; Canaday v. Baysinger, 170 Iowa 414, 152 N. W. 562; Hiller v. Herrick, 189 Iowa 668, 179 N. W. 113; Iowa City State Bank

v. Pritchard, 199 Iowa 676, 202 N. W. 512; DeKoster v. Roggen, 229 Iowa 938, 295 N. W. 440; In re McCauley's Guardianship, 213 Iowa 262, 235 N. W. 738; In re Vail's Estate, 223 Iowa 551, 273 N. W. 107; In re Richter's Will, 212 Iowa 38, 234 N. W. 285; Carman v. Davis, 193 Iowa 1076, 188 N. W. 892; Mapes v. Rose, 187 Iowa 289, 174 N. W. 235; Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834; 69 C. J. 530–539, sections 1609, 1610, and 1616; Schmucker v. Reel, 61 Mo. 592; and, Pembroke Academy v. Epsom School District, 75 N. H. 408, 75 A. 100, 37 L. R. A., N. S., 646, at 649, 650, and cases cited.

They insist that the word "desire" was used by the testator in paragraph seven, not in the sense of "wish" or "request," but as a positive direction. To sustain this contention, they call to our attention: In re Richter's Will, 212 Iowa 38, 234 N. W. 285; Central Trust Co. v. Langan, 197 Iowa 1202, 198 N. W. 652; Horak v. Stanley, 216 Iowa 318, 249 N. W. 166; Porter v. Tracey, 179 Iowa 1295, 162 N. W. 800; Phelps Mortgage Co. v. Thomas, 194 Iowa 1078, 190 N. W. 399. They urge upon us those canons of testamentary construction that courts do not look with favor upon an interpretation of a will which deprives a blood relative of a testator from a share in his bounty, and that intestacy of any part of the testator's estate should be avoided if possible.

We have no quarrel with the principles of law contended for by appellants as stated in the cases cited, nor with the decisions therein, but in our judgment they are not applicable to the facts in the case before us. Likewise, the rules of construction contended for are sound, and have many times been given consideration by this court and other courts. But these rules and all other rules of testamentary construction are but subservient, and assistant, to that cardinal and controlling rule, that the intention of the testator is to govern. That intent, when ascertained, will be enforced by the courts without regard to abstract, arbitrary, or technical rules of construction. Indeed there is no need for any rule of construction when the intention of the testator is clear and unequivocal on the face of the Will, and is not inconsistent with any other provision therein. Neither construction, nor precedent is of any aid

in such situation. Anderson v. Anderson, 227 Iowa 25, 31, 286 N. W. 446; Guilford v. Gardner, supra (180 Iowa 1210, 1221); In re Will of Weien, 139 Iowa 657, 671, 116 N. W. 791, 18 L. R. A., N. S., 463; Blackford v. Anderson, supra (226 Iowa 1138, 1172); Richards v. Richards, 155 Iowa 394, 396, 136 N. W. 132; Harvey v. Clayton, 206 Iowa 187, 190, 220 N. W. 25; Luitjens v. Larson, supra (222 Iowa 1320, 1323); Benham v. Turkle, supra (173 Iowa 598, 603); Bellamy v. Bellamy, supra (184 Iowa 1193, 1197); In re Estate of Pottorff, supra (216 Iowa 1370, 1373); Starr v. Newman, supra (225 Iowa 901, 905); Smith v. Runnels, 97 Iowa 55, 65 N. W. 1022.

Appellee insists that there is no ambiguity or uncertainty in the Will, and that by its very terms it plainly and absolutely gives to the appellee one third of the personal property remaining after paying obligations of the testator and.his estate, one third of the farm rentals after payment of taxes, insurance, and expenses of upkeep, and one third of the proceeds of the sale of the farm, and the life use of the home and household property, to be her own property without condition, qualification, or limitation, to dispose of as she pleases. They call to our attention the well-known rule that a beneficiary who receives an absolute bequest or devise of property in one provision of a Will cannot have it destroyed or limited by a subsequent and separate provision repugnant to and inconsistent with the first. We have so held a great many times. See Bills v. Bills, 80 Iowa 269, 45 N. W. 748, 8 L. R. A. 696, 20 Am. St. Rep. 418; Bradford v. Martin, supra (199 Iowa 250); Reichauer v. Born, 151 Iowa 456, 131 N. W. 705; Todd v. Stewart, 199 Iowa 821, 202 N. W. 844; In re Estate of Bigham, 227 Iowa 1023, 290 N. W. 11; Phillips v. Phillips, 217 Iowa 374, 251 N. W. 511; Frazier v. Wood, 219 Iowa 36, 44, 255 N. W. 647, 257 N. W. 768; Law v. Douglass, 107 Iowa 606, 78 N. W. 212; First National Bank v. Torkelson, 209 Iowa 659, 228 N. W. 655; Iowa City State Bank v. Pritchard, 199 Iowa 676, 678, 202 N. W. 512.

In his directions to the executor to whom the property was bequeathed and devised, as trustee, the testator placed no limitation upon, and attached no condition to the gifts to his wife. He did not give her the mere use of the money, or the income

therefrom, but he gave her the money. He expressly recognized the fact that as his wife she was entitled to one third of his property as her distributive share, and stated in paragraph seven that he did not wish to deprive her of it. In the same sentence, in each paragraph by which he bequeathed one third of the property to his wife, he bequeathed two thirds of it to his daughter. There is no claim that the latter bequest was not an absolute one. He recognized that his wife was entitled to the property and that he had given it to her. He made no attempt to bequeath any of this property to his grandson, but he requested his widow, not as a matter of right, or because he demanded it, but *"as a matter of courtesy to me* I ask that she *leave* at her demise to my beloved grandson * * * whatever property she may have which *she received from my estate."* Plainly he recognized that he had given this property to his widow to be her own but he "desired" as a courtesy to him, and as a favor to the grandson, that she give it to the latter at her death. This was clearly precatory in its nature. A mere wish, desire, or request to his widow to be granted or refused as she might choose. He was not depriving of his bounty one who would have inherited had there been no will. His daughter would have received two thirds of the property, in that event, and the grandson would have received nothing. In giving the property to the daughter, who was entitled to it, he no doubt felt that her son would ultimately get the benefit of it. Just why the testator did not dispose of the remainder interest in the home in Alden and the household furnishings, we do not know, but the fact is he died intestate as to that property. He may have known that in doing so it would go to his heirs. But whatever the reason, it does not defeat his absolute bequest to his widow, nor his clear intention, as gathered from the Will itself and the surrounding circumstances, that she should have the bequest absolutely. See Ransom v. Mellor, supra (230 Iowa 451), where a somewhat similar situation was discussed. It is our conclusion that the desire expressed by the testator in the seventh paragraph was purely precatory, and that if it should be construed as a bequest to him, or as a power or trust in his behalf, it would be void as repugnant to the absolute gift to the widow. In support of our conclusions, we call attention to

Richards v. Richards, supra. (155 Iowa 394, 395) ; In re Final Report of Campbell, 209 Iowa 954, 229 N. W. 247; In re Estate of Hellman, 221 Iowa 552, 266 N. W. 36; Bradford v. Martin, supra (199 Iowa 250) ; and In re Estate of Vail, 223 Iowa 551, 273 N. W. 107.

In the Richards case, supra, the devise to the widow was expressly qualified in such manner that this court held that she received but a life estate. However, in speaking of a disposition precatory in form, on page 397 of the Iowa Report, page 133 of 136 N. W., we said:

"Of course, such words may be regarded as testamentary or dispositive in character, or as creating a trust in the first taker; but the intent to so use them must be clear and unambiguous. If the testator meant by the words used, to control the disposition of his property, then the general rule is to construe them as dispositive. But, where used following an absolute devise, they are almost universally held to be precatory, in order to avoid the claim of repugnancy."

In the Campbell case, supra (209 Iowa 954, 229 N. W. 247), the testator in paragraph two said:

"(2) 'To my beloved wife, Elizabeth A. Taylor, I hereby devise, give and bequeath all of my property, both real and personal which I may own or be entitled to at my decease.'

"(3) 'I make the above bequest knowing that my beloved wife, Elizabeth A. Taylor, will see that all the property both real and personal which she may own at the time of her decease shall go to my beloved sons and daughters.'

"(4) 'It is my wish that whenever a certain real estate mortgage of $15,000 now owned by me has been paid to my beloved wife hereinbefore named that she divide the amount among my beloved sons and daughters share and share alike. Names of my beloved sons and daughters are [here follow the names of three sons and five daughters].' "

In his final report, the executor made reference to the fact that he collected the $15,000 mortgage, and delivered it to the widow. Judgment creditors of two of the sons named in paragraph 4, objected to this construction of the Will. In uphold-

ing the executor, this court said (commencing on page 955, 209 Iowa, page 248, 229 N. W.) (speaking of the judgment creditors) :

"It is their contention that, under the terms of this will, a trust was created in the hands of Elizabeth A. Taylor of the proceeds of this $15,000 mortgage, and that thereunder, the proceeds of said mortgage were to be divided, share and share alike, among the sons and daughters of Francis Taylor.

"By referring to the second section of the will, it will be noted that Elizabeth A. Taylor had complete title to all of the property of the deceased. Section 3 is simply an expression of confidence that the wife will do certain things with her property. Section 4 is the one about which the conflict rages. The testator therein expresses a 'wish' that, when the $15,000 mortgage is paid to the wife, she divide the proceeds thereof among the children, share and share alike. Does this create a trust, or is it simply a wish on the part of the deceased, that is binding on no one? What the intention of the testator was, is the question for solution.

"The use of the word 'wish' has been many times before the courts, and in many instances has been held to create a trust, and in an equal or larger number of instances, has been held not to create a trust. Whether it does or does not create a trust depends wholly upon its setting in and the context of the will. * * *

"A review of these cases leads to the suggestion first above made, that whether or not the word 'wish' is to be construed as creating a trust depends wholly upon its place in the will and its relation to the context thereof.

"Generally speaking, a wish is a wish, and nothing more, unless the testator used it in such a way as to indicate a different intention. The whole context of this will shows that this mortgage was to pass to the wife. She took complete title thereto, under the second paragraph of the will, and the fourth paragraph recognized that she was to receive the same. In other words, there was no thought in the mind of the testator that the executor should have anything to do with this mortgage. The wife was to have the mortgage, and when it was

due, she was to receive the proceeds thereof. This much is certain.

"The testator, by Clause 4 of the will, expresses a 'wish' that, after the wife has received the proceeds thereof, she shall distribute such proceeds, share and share alike, among the children. Does this indicate that the intention of the testator was that she should receive said mortgage and hold the same, and that, when the same was cashed, she was then bound to divide the proceeds among these eight children? We do not think that this was his intention. The second paragraph shows, without doubt, that he intended her to have all of the property. The third paragraph is simply an expression of confidence in the fairness of the wife, and in pursuance thereof, he 'wishes' that she would distribute the proceeds of this mortgage, when she received it, in cash among these children. We have had something of a similar question before us in the past history of this court, but the only case that squarely touches the question of the use of the word 'wish' is Bradford v. Martin, 199 Iowa 250. We there said:

" 'We deem the use of the word "wish" in these bequests purely precatory; but if not so, it creates a repugnance, as against the clause giving a fee-simple title to the wife, and therefore is void.'

"We have the same situation in the present case as existed in the Bradford case. If the fourth section of the will in the instant case should be held to create a trust estate, it would be repugnant to the second section of the will, which gave to the wife complete title to all of the property of the deceased. It must follow, therefore, that, under the terms of this will, the children had nothing, and the wife took complete title to all of the property of which Francis Taylor died possessed. This is the same conclusion reached by the district court."

It will be noted that in paragraph 2 of the Will, there was no designation of what estate the wife was to receive, nor was it described as absolute or unqualified. In Bradford v. Martin, supra, however, the word "absolutely" was used in the devise to the wife.

In In re Estate of Hellman, supra (221 Iowa 552, 553, 266 N. W. 36, 37), the devise was as follows:

" '9. All the balance of my property of all kinds I give, devise and bequeath to my beloved husband, Frank Hellman and appoint him executor of this my last will without bond. It is my wish that he have full control of my property, the free use thereof, power to convey and sell all real estate, invest the proceeds, and at his death that portion of my estate herein given him which was mine by inheritance and additions thereto shall be by my husband divided equally among my four sisters.' "

In a codicil in which the testatrix referred to this paragraph, in speaking of her husband, she said: " 'He understands my wishes as herein set forth.' " The husband disregarded the request of his wife. The trial court and this court held that the devise to the husband was an absolute one. Speaking through Justice Hamilton, we said (commencing on page 555 of the Iowa Report, page 38 of 266 N. W.):

"That the testatrix used apt language to describe a fee-simple title or absolute estate in the first sentence of paragraph 9 cannot be questioned. She says:

" 'All the balance of my property of all kinds I give, devise and bequeath to my beloved husband, Frank Hellman, and appoint him executor of this my last will without bond.'

"The old familiar stock phrases of the common law, such as 'in fee simple,' 'absolutely,' 'to have and to hold forever,' do not appear, but words of this character are unnecessary in conveying the fee-simple title. All that follows this statement is preceded by the words, 'It is my wish,' and it is in the language following the word 'wish' that we must look for words of limitation on the previous unlimited devise and bequest to the husband. It will be noticed that there are no words of gift or grant to her sisters in this paragraph. * * *

"It should be noticed that there are no words expressly designating the character of the estate intended in paragraph 2 of this will in the Campbell case. The word 'absolute' is not there. * * *

"We conclude that the trial court was correct in holding that the language was insufficient to create a trust; that the husband took the fee-simple title to the entire residuary

estate, and that the other language amounted to nothing more than the expression of a wish or desire as to what disposition she wished her husband to make of that portion thereof which she had inherited from her mother's estate, and, there being no imperative obligation expressed or, by reasonable intendment, imposed upon the husband to follow such wish or request, the matter was left wholly within his discretion.''

In In re Estate of Vail, supra (223 Iowa 551), the Will made four specific bequests of $7,000, without any qualification. The 5th bequest was: ''To Adaline Geist, of Norfolk, Neb. the annual income from Seven Thousand Dollars invested in securities and held by my executor for this purpose. Also $2,000.00 in cash or securities at my death.'' No attack was made upon the specific bequests of $7,000, or upon the bequest of $2,000, as to their not being absolute and unqualified bequests, and the court quite clearly intimates that any such attack would have been fruitless. The bequest of the income was held to be for life only.

In the case before us, the bequests of money to the widow were not in any specific sums, but they were in specific fractions, and were of the money, itself, and not the income. The bequests to the appellee were, therefore, absolute, and unaffected by the provisions of paragraph seven of the Will. We have given careful consideration to other matters discussed in argument by the appellants, and it is our conclusion that the judgment and decree appealed from should be affirmed. In view of this conclusion, we find it unnecessary to pass upon appellee's motion to strike appellants' brief and argument. The judgment and decree is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.