IN RE ESTATE OF JOHN FLANNERY.

No. 43153.

DECEMBER 17, 1935.

REHEARING DENIED APRIL 8, 1936.

Wallace & Claypool, R. G. Popham, and Paul Toomey, for appellant William Meade.

J. M. Otto and Messer & Nolan, for appellees Wm. P. Burns and Mary C. Donohoe, executors.

HAMILTON, J.—John Flannery died testate, a resident of Johnson county, Iowa, on February 23, 1934. His will and codicil were duly admitted to probate on March 5, 1934, and on the same date the parties named therein were duly appointed and qualified as executors. The original will was executed April 20, 1933, and the codicil October 28, 1933. For the purposes of this case, it is only necessary to set out certain specific paragraphs of said will. Testator first provides for the payment of his debts and funeral expenses. Then follow fourteen specific bequests to certain named devisees and legatees. Paragraph 16 provides that the money bequests are to be paid out of the testator's moneys and credits and the proceeds of land situated in Iowa county, Iowa, and that real estate specifically devised shall not be disturbed for the purpose of paying said money bequests; and in the event that there should not be sufficient moneys and credits on hand to pay said money bequests in full, that such money bequests shall be reduced pro rata accordingly. Paragraph 17 is a residuary clause naming certain nephews and nieces, some twenty-six in all, as his residuary devisees and legatees, some of whom had already received specific bequests or devises.

This controversy centers around paragraphs 10, 11, and 18 of the original will as changed and modified by the codicil and are in the following language:

"Tenth: To my nephew, William Meade, son of my sister, Jennie Meade, I do hereby give, devise and bequeath the following described premises situated in Johnson County, Iowa, to-wit: The Southwest Quarter of the Southwest Quarter of Section 10, in Township 79 North, Range 8 West of the 5th P. M. and also to my said nephew, William Meade, I do hereby give, devise and bequeath the sum of Nine Thousand ($9,000.00) Dollars to be

his absolutely and forever, and all of said property contained in this paragraph hereby devised and bequeathed to him *shall be his free from any debts or obligations he may be owing me at the time of my death.*"

"Eleventh: My home property, being the lot and dwelling known as 414 South Dubuque Street, Iowa City, Iowa, the legal description thereof being the same as that devised to me under the will of my sister, Rebecca Flannery, I do hereby give, devise and bequeath unto my two nieces, Mary C. Donohoe and Mae Burns, to be theirs absolutely and forever, in equal shares. I do also give, devise and bequeath unto my said two nieces, Mary C. Donohoe and Mae Burns, the sum of One Thousand ($1,000.00) Dollars each—that is, One Thousand Dollars to each of my said two nieces named in this paragraph of my will."

"Eighteenth: It is my will that any and all debts and obligations that may be owing me at the time of my death by any of the devisees and legatees herein named, shall be deducted from his or her share, save and except that any debts or obligations owing by my nephews, William Meade, and Emmett Meade, and the bequests and devises to them shall be free from any debts they may be owing me."

The codicil, omitting the formal parts, is as follows:

"First: The Eleventh Paragraph of my will I do hereby cancel and annul, and in lieu thereof I do hereby will and devise as follows:

"Eleventh: My home property, being the lot and dwelling known as 414 South Dubuque Street, Iowa City, Iowa, and the legal description thereof being the same as that devised to me under the will of my sister, Rebecca Flannery, I do hereby give, devise and bequeath unto my niece, Mary C. Donohoe, to be hers absolutely and forever. I do also hereby give, devise and bequeath to my said niece, Mary C. Donohoe, the sum of One Thousand ($1,000.00) Dollars, and to my niece, Mae Burns, I do hereby give, devise and bequeath the sum of One Thousand ($1,000.00) Dollars.

"Second: I do hereby cancel and annul the Eighteenth Paragraph of my said Last Will and Testament, and in lieu thereof I do hereby devise as follows:

"It is my will that there shall be deducted from the share or

shares of any of the devisees and legatees named in this will any and all sums loaned by me to them and not repaid me at the time of my death, *before they shall share in my estate.* Such loans being evidenced by their notes or other obligations held by me, the intention of this paragraph being that there shall be deducted from the share of any legatee or devisee herein named any sums evidenced by notes of such devisee or legatee which have not been paid and for which I have never received the money evidenced by said notes.

"The remaining paragraphs and contents of my said original will I do hereby ratify and re-affirm, and I do now hereby ratify and re-affirm my said original will *as modified and amended by this codicil.*"

The estate was valued by the inheritance tax appraisers at $108,643.75. Indebtedness against the estate was estimated at $5,000. The record shows that William Meade was indebted to the estate on two promissory notes in the total sum of $9,926.66, together with interest.

On November 8, 1934, the executors filed what is designated as "application for order," and for cause of action against William Meade alleged in substance that they are the executors of the estate; that by the terms and provisions of the will, certain real estate (describing it, being the real estate described in paragraph 10 of the will), together with the legacy of $9,000, was, subject to certain conditions and provisions, devised and bequeathed to William Meade; that at the time of the death of said testator, said William Meade was indebted to the estate on two promissory notes (describing them) in the total sum of $9,926.66 with interest thereon at 5 per cent from November 1, 1934; that the amount which said William Meade would ultimately receive from the estate of the testator as one of the legatees would be wholly inadequate to pay the full amount of said indebtedness after deducting and retaining the $9,000 bequest made to said Meade; that said William Meade had no other means with which to pay said indebtedness except as the same might be retained or offset and deducted from the devise and bequest contained in said will; and that in order to collect the indebtedness of said William Meade to the estate it was necessary to sell the real estate described, and apply the proceeds of said sale, together with the $9,000 bequest and any sum due and

payable to him as residuary legatee, on said indebtedness due and owing the estate by William Meade, and the inheritance tax due and owing the state of Iowa. Said executors pray for an order authorizing and empowering them to sell said real estate and to apply the proceeds accordingly, including the inheritance tax, and payment of costs of procuring the order and all costs of giving such notice of sale and of the order under the application, together with statutory attorneys' fees on each of said notes as therein provided, and for such other and further orders in connection with the application as to the court might seem just and proper. This application is signed by the attorneys for the executors and duly verified. Copies of the notes were attached as exhibits and the notes provide for attorneys' fees.

In answer to this, William Meade admitted that the applicants were the executors, admitted the devise and bequest contained in paragraph 10 of the will, admitted the execution of the notes, and denied generally all other allegations of the application. The court found for the executors and against the said William Meade and that William Meade was indebted to said executors of the estate and to the estate on said notes in the sum of $9,926.66, with interest at 5 per cent per annum, payable annually, from the first day of November, 1934, and for the costs of this proceeding, including statutory attorneys' fees to be computed upon the amount of the indebtedness as evidenced by said notes; that the real estate described and contained in paragraph 10 of said will was conditionally devised to said William Meade, and that the title to said real estate was not and has not vested in said William Meade; that said William Meade failed, neglected, and refused to pay the obligation owing by him to said decedent and to his estate; and that by reason of the insolvency of said William Meade and other reasons as shown by the evidence, there was no means or method by which said estate could enforce payment of said obligations, except by a sale of the land referred to. The court then ordered sale of said real estate, and that the proceeds thereof, together with the specific legacies of William Meade, be subjected to the payment of the obligations due the estate. The executors were specifically ordered to convert said property into cash, and said real estate was ordered sold and sufficient amount of the total proceeds of the real estate and legacies retained and appropriated to the satisfaction of said indebtedness and costs, including statutory attorneys' fees and

also including any inheritance tax due and owing on account of any bequest to the said William Meade, and any balance paid to said William Meade, authorizing the executors to rent said real estate pending sale thereof. It is from this decree that the said William Meade has appealed to this court.

The specific grounds of error upon which appellant predicates his appeal are, first, that the court erred in decreeing a retainer of the real estate, and the proceeds therefrom, together with the $9,000 legacy bequeathed by the testator to William Meade retained and offset against the claimed indebtedness of William Meade; second, in ordering judgment against William Meade in favor of the executors on the notes of said William Meade; third, in taxing attorneys' fees. It is the contention of appellant that by paragraph 10 this real estate was devised to William Meade free from any indebtedness of said William Meade to the testator or his estate, and that the codicil only modified paragraphs 11 and 18 of the original will and confirmed all other paragraphs and provisions, and that the second paragraph of the codicil in no way limited paragraph 10 of the original will, and that the provision in the second paragraph of the codicil that "there shall be deducted from the share or shares of any of the devisees and legatees named in this will any and all sums loaned by me to them and not repaid to me at the time of my death, before they shall share in my estate, such loans being evidenced by their notes or other obligations held by me," etc., referred only to the legatees and devisees named in said codicil.

Precedents are of little value as applied to the construction of the language of a will. This is due to the fact that ordinarily no two persons use exactly the same words to express their meaning, and it is likewise true that we seldom find two wills made under precisely similar circumstances, and for this reason we have said that "precedents in such cases may be very properly employed as aids, but they should not lead either court or counsel to insist on a construction of a will which, in view of the situation disclosed in the particular case under inquiry, it is clear was not in the mind of the testator." Hiller v. Herrick, 189 Iowa 668, 671, 179 N. W. 113, 114. There are, however, certain well-defined canons of construction to be applied in arriving at the intention of the testator in the construction of wills, among which, as applicable to the will in question, may be mentioned the following:

The will must be taken by its four corners and the intent of the testator must be gathered from the entire will and all parts thereof must be construed and given force and effect, if possible, to determine what was the intent of the testator from the wording of the will itself. In re Will of Richter, 212 Iowa 38, 234 N. W. 285; Collins v. Collins, 116 Iowa 703, 88 N. W. 1097.

Where there is no ambiguity, the court is not authorized to override the plain provisions of the will by resorting to construction. The sole justification and the only purpose of a judicial construction of a will is the development of the intent of the testator. In so doing, every provision of the instrument, if lawful in character, is to be given due effect. The court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may seem to be a more just or appropriate distribution of his estate. Guilford v. Gardner, 180 Iowa 1210, 1221, 162 N. W. 261.

"The purpose of construction is to ascertain and give effect to the intention of the testator. The will must be construed as an entirety, and effect given as far as possible to each provision. The several provisions should, so far as possible, be harmonized and made subservient to the testator's main purpose." Brown v. Brown, 213 Iowa 998, 1000, 240 N. W. 910, 911.

"* * * where the language is plain and unequivocal, there is no room for construction. * * * In other words, where the language is clear, both in expression and meaning, rules of construction are inapplicable. It is also fundamental that, where there is a will and a codicil, the codicil is welded into the will, becomes an integral part thereof, and, in determining the intent of the testator, the will and codicil are to be read together as one instrument." In re Thomas' Estate, 220 Iowa 50, 54, 261 N. W. 622, 624.

Between two inconsistent provisions in a will, the first will control and the second is void as being repugnant to the first. Phillips v. Phillips, 217 Iowa 374, 251 N. W. 511. But where there is an irreconcilable conflict between the terms of the will and a codicil, the codicil, being the last expression, will govern. Bennett v. Primer, 191 Iowa 1233, 184 N. W. 392; 51 A. L. R. 692, note.

A will and codicil should be construed together as parts of

one and the same instrument, and unless there is an irreconcilable conflict or discrepancy between them, the codicil is no more the last expression of testator's intention than if it had been written as a part of the original instrument. The fact that a codicil is executed usually denotes a change in the disposition of the estate, either by additions to or alterations in the provisions of the will. However, it is not infrequent that codicils are merely explanatory, made for the purpose of clarifying or making plain some provision of the will, and it becomes the duty of the court, if possible, to harmonize the several clauses of the will and codicil so as to give effect to every provision, *provided that such construction is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument.* Another way of stating the rule in this regard is that the language of a codicil will be permitted to disturb the provisions of the will only to the extent necessary to give effect to the codicil. The codicil supplants the will only to the extent of those provisions of the will that are inconsistent with it. 51 A. L. R. 695, note.

█▌█ In looking at the original will for the purpose of ascertaining, if possible, the general purpose and intent of the testator, we find that in so far as the devisees and legatees are indebted to the estate, William Meade and Emmett Meade stood in a class by themselves. The property devised and bequeathed to them was to be free from any debts which they might owe the estate. This is the provision of paragraph 10, and it is emphasized by excepting them from the operation of paragraph 18. None of the others was thus favored. Several of the other legatees were in fact indebted to the testator and he provides in paragraph 18 of the original will as follows: "Any and all debts and obligations that may be owing me at the time of my death by any of the devisees and legatees herein named shall be deducted from his or her share." Then follows the exception with reference to William and Emmett Meade. Later on he executed the codicil. It will be noticed that the codicil had two purposes: First, it canceled and annulled paragraph 11 of the will and substituted in lieu thereof a new paragraph eleventh. Second, it canceled and annulled the eighteenth paragraph of the will and in lieu thereof substituted a new paragraph. Construing the will and codicil together, what is the plain intention of the testator in making this codicil?

We deem it unnecessary to take up in detail and fully discuss each and every theory and contention of the appellant, but will consider those pertinent and necessary to a correct solution of the issues involved in this case. The principal contention is that the language contained in the second paragraph of the codicil is too indefinite and uncertain and ambiguous as to its meaning to permit it to override the plain, clear provisions in the last clause of paragraph 10 of the original will, wherein it is provided that William Meade is to take his legacy and devise free from any debts. In order to reach this conclusion, appellant found it necessary, in order to discover some reason or purpose for changing, modifying, and amending the will, to take the position that the use of the words "any legatee or devisee herein named" must be limited to those whose names are mentioned in the codicil, namely, Mary C. Donohoe and Mae Burns, as they are the only legatees specifically named in the codicil. If appellant's contention is correct, the second paragraph of the codicil was wholly unnecessary. He had already provided in paragraph 18 of the original will for the deduction of the debts of all the legatees except William Meade and Emmett Meade. When he canceled paragraph 18 of the original will and by his codicil substituted a new paragraph therefor, he left out this exception in favor of the Meades and made no exception of any of his devisees and legatees.

In arriving at the testator's intention, we must take out of the original will paragraphs 11 and 18 and substitute therefor the new paragraph eleventh contained in the codicil, and the new paragraph contained in the second paragraph of the codicil for paragraph 18 of the original will. It is apparent from an examination of the codicil that that is what the testator intended. He meant to have paragraphs 11 and 18 of the original will entirely removed and the two new paragraphs inserted. This is plainly evident by the fact that in writing the new paragraph 11 he designates it "eleventh." Likewise, in rewriting paragraph 18 he intends that it shall be read as a part of the original will. Therefore, he uses the term "the devisees and legatees named in THIS WILL," and likewise uses the term "legatee or devisee HEREIN NAMED." When considered in this manner, the language in the second paragraph of the codicil upon which the appellant places so much reliance, namely, "legatees or devisees herein named," loses all of its force. To hold with appellant that this

new paragraph 18 contained in the second clause of the codicil was intended to apply only to Mary C. Donohoe and Mae Burns, referred to in the codicil in the new paragraph eleventh, which is substituted for the old paragraph eleventh, and to no one else, is to give to the language used a strained and unnatural meaning, entirely out of harmony with the plain intent and purpose of the testator. To do this would permit all other devisees and legatees to share in the estate without having their debts and obligations deducted. The inventory introduced in evidence shows that many of these legatees were indebted to the estate. It fails to show, however, that Mary C. Donohoe and Mae Burns were indebted to the estate, and there is no evidence that they were so indebted.

Appellant lays much stress upon the concluding paragraph of the second provision of the codicil which reads as follows:

"The remaining paragraphs and contents of my said original will I do hereby ratify and re-affirm," but it should be noted that the same is ratified and reaffirmed "as *modified and amended* by this codicil." Much of the argument of the able and distinguished counsel for appellant will not bear close analysis. They argue that the purpose of using the phrase "herein named" was to indicate that testator did not intend to include William Meade among those who should pay their indebtedness before they should take any interest in the estate. We fail to find any such special meaning, or application, attributable to the language used. This language applies with equal force to all other legatees named in the will. There is the same weakness in their argument in reference to the use of the words "absolutely and forever" in connection with paragraph 10, containing the devise and bequest to William Meade. This same language is used in several other paragraphs of the will. They say that the use of these words is inconsistent with a retainer or set-off and in another part of their argument they contend that the retainer or set-off provided for in the second paragraph of the codicil applies only to the legatees named in the codicil, to wit, Mary C. Donohoe and Mae Burns, and when we look at the language of this codicil we find the testator using the same words, "absolutely and forever," in the devise and bequest to Mary C. Donohoe. If such words are inconsistent with the retainer and offset when used in connection with the devise and bequest to the

Meades, it certainly would have the same meaning when used in the bequest and devise to Mary C. Donohoe. They call attention to the fact that the will was drawn by a lawyer, and that he had some purpose in making use of these words ''absolutely and forever'', while in another part of their argument they say that the use of these words adds nothing to the legal title. Surely a lawyer could find a better way of expressing his meaning than to use a phrase which is obsolete and mere surplusage in so far as conveying title is concerned. Apparently the same lawyer wrote both the will and the codicil and in the codicil he used the words ''cancel and annul'' and ''in lieu thereof''. Counsel for appel- lants say these words have no special significance, while the use of the words ''herein named'' and ''absolutely and forever'' must be given special significance and emphasis. We think the reasoning should be reversed. The words ''cancel and annul'' cannot be misunderstood. By the use of these words, the testator meant to wipe out paragraphs 11 and 18 of his original will and to put in place of, or ''in lieu of'' the new paragraph 11 and a new paragraph 18.

To apply the meaning or interpretation contended for by appellant to the phrase ''to be his absolutely and forever'' in the case of the Meades would require the same application to all other devisees and would work havoc to the general intent and purpose of the testator plainly expressed in his will and codicil to require an offset of indebtedness due from the legatees and devisees named in his will as this same expression is used in practically every devise of real estate contained in the will. If the use of this language prevents the application of the doctrine of retainer and offset as against the Meades, then it would apply to the devisee, William P. Burns, who appears to be indebted to the estate in a principal sum in excess of $6,000 to James Meade, another devisee, indebted to the estate in excess of $2,000, to John J. Meade, who appears to be indebted to the estate in a sum in excess of $14,000. To adopt a strained construction of the language used as contended for by appellant would prevent the application of the doctrine of retainer and offset as against the legatees and devisees who are owing the estate and apply it to devisees and legatees who apparently do not owe the estate. We think the provisions of the second paragraph of the codicil wherein he refers to ''the devisees and legatees named in this

will'' and "legatee or devisee herein named" have reference to all the legatees and devisees namd in the will as modified and amended by the codicil, and, so construed, the provisions of the second paragraph of the codicil are inconsistent with the last clause of paragraph 10 of the original will, wherein it is provided that the devisee under said paragraph shall take the property free from any debts or obligations he might be owing the testator at the time of his death, and the language of the codicil, being the last expression of the testator, must govern. This court has held that there are some things a testator may not do. He may not include provisions which are absolutely inconsistent in terms, and have all given force and effect. Law v. Douglass, 107 Iowa 606, 78 N. W. 212.

■■■ That William Meade was insolvent, as shown by the evidence, cannot be seriously questioned. We do not understand appellant to dispute the fact that under the rule in this state not only the personal property but the proceeds from the sale of real estate may be retained and offset as against indebtedness due the estate when the devisee is insolvent. This is the rule definitely settled in this state by the case of Schultz v. Locke, 204 Iowa 1127, 216 N. W. 617, and cases therein cited. The decree of the court, therefore, in subjecting the proceeds of the real estate devised to William Meade, together with the legacies, to the payment of his indebtedness owing to the estate and inheritance taxes due the state and costs of the application must be upheld.

■■■ We find no reason in the record warranting the court in allowing attorneys' fees. The action was not a suit upon the notes. There was no affidavit for attorneys' fees filed with the application, and under section 11646 of the 1931 Code this is a requisite procedure before attorneys' fees may be taxed. There is no showing in this record that such affidavit was ever filed. In so far as the decree provides for the taxation of attorneys' fees as a part of the costs, the same should be modified, and in all other particulars affirmed.—Modified and affirmed.

KINTZINGER, C. J., and MITCHELL, DONEGAN, RICHARDS, and POWERS, JJ., concur.