IN RE ESTATE OF Z. T. HUSTON.

W. A. KINNAIRD, Administrator, Plaintiff, Appellee, v. MARY O. HUSTON et al., Defendants, Appellees, ALICE R. JOHNSON et al., Defendants, Appellants, MRS. MAUD HUSTON et al., Defendants, Appellees.

No. 43867.

Vernon R. Seeburger, for appellee, W. A. Kinnaird, Administrator.

Arthur G. Rippey, for appellees, Mary O. Huston and Taylor Huston.

Hamilton & Webster, for appellees, Mary I. Dabney and Earl C. Huston.

Lloyd H. Williams and J. F. Slaninger, for appellants, Alice R. Johnson, Francis W. Huston and Anna May Huston.

. S. A. Hays, for appellees Mrs. Maud Huston and Mrs. Maud Huston, as executrix of estate of Walter Huston.

KINTZINGER, J.—This controversy involves the construction of the last will of Z. T. Huston, who died July 30, 1935. The decedent was married twice, his first wife being Phebe Ann Huston, who died prior to December, 1899. The children surviving that marriage were four, named Robert L. Huston, Mary Huston (now Mary Dabney), Walter Huston, and Earl C. Huston.

Robert L. Huston died in 1912 survived by his widow, Alice (now Alice Johnson), and two children, Francis and Anna May Huston.

Walter Huston died in July, 1931, leaving Mrs. Maud Huston, his widow, and no children surviving.

Z. T. Huston, the testator, was survived by Mary O. Huston, a second wife, Mary Huston Dabney and Earl C. Huston, children by his first wife, and Taylor Huston, a son by his second wife. His last will and testament, hereinafter set out and the subject of this litigation, was probated September 4, 1935.

On December 12, 1899, and prior to his second marriage, Z. T. Huston entered into an antenuptial contract with Oriola

Wilson (now known as Mary O. Huston), in contemplation of his marriage to her on December 13, 1899. This contract is also hereinafter set out. To this union was born a son named Taylor Huston, who survived decedent.

The following is a copy of the antenuptial contract entered into between Z. T. Huston and Oriola Wilson:

"Whereas * * * Z. T. Huston, party of the first part and Oriola Wilson party of the second part, are about to enter into a contract of marriage, and

"Whereas the party of the first part is now possessed of real and personal property of the value of Ten Thousand Dollars ($10,000.00), which said property has been accumulated by the joint efforts of himself and his deceased wife Phebe Ann Huston, and

"Whereas the said Phebe Ann Huston left surviving her the following heirs at law being her children by the said party of the first part Z. T. Huston, to-wit: Robt. L. Huston, Mary A. Dabney, Walter Huston, and Earl C. Huston, and

"Whereas it is desired by the parties hereto that, the said last named parties to-wit: Robt. L. Huston, Mary A. Dabney, Walter Huston and Earl C. Huston, after the death of the said Z. T. Huston have together to be equally divided between them one third * * * of all property now owned by said Z. T. Huston,

"Now Therefore * * * in consideration of the marriage of the parties hereto, it is hereby agreed * * * as follows:

"* * * that in case the party of the second part survives the party of the first part, that there shall be paid by the Executors or Administrators of the first party, as soon as practical after the death of the said first party, as follows:

"To R. L. Huston Eight Hundred and Thirty-three and 33/100 dollars.

"To Mary A. Dabney Eight Hundred and Thirty-three and 33/100 dollars.

"To Walter Huston Eight Hundred and Thirty-three and 33/100 dollars.

"To Earl C. Huston Eight Hundred and Thirty-three and 33/100 dollars:

and in case either of the above should die without wife or issue the share of such shall be equally divided among the surviving of them, *and in case of the death of either leaving a wife or heirs*

*the share of any such who may so die is to go to such wife or heirs in the manner provided by law.*

"That after the payment of the said amounts, the said party of the second part is to have one-third of all the remaining property of which the said first party may die seized in full of her distributive share of his estate, and all of the remaining property of said first party, after the payment of the amounts aforesaid and after setting apart to the party of the second part her one-third of the property remaining after making said payments, *shall be divided equally among all of the children and heirs at law of the said Z. T. Huston including those above named and all others that may be hereafter born to the parties hereto,* provided however that *in case of the death of either of said heirs before the death of the said Z. T. Huston, the share of any such shall go to its heirs as provided by law* but if any die without wife or issue the share of any such who may so die is to go to the survivors in equal shares per stirpes.

"Witness our hands this Dec. 12th, 1899.

"Zachary T. Huston First Party
"Oriola Wilson Second Party."

(Duly acknowledged December 12, 1899.) (Italics ours.)

The following is a copy of the material parts of the last will and testament of Z. T. Huston, executed in August, 1904:

"I.   I will and direct that all of my just debts be first paid.

"II.   In accordance with the terms of an antenuptial contract made and entered into on December 12, A. D. 1899, by and between myself and Oriola Wilson I will and direct that there be first paid to each of my following named children viz: R. L. Huston, Mary I. Dabney, Walter Huston and Earl C. Huston the sum of Eight Hundred Thirty-Three and 33/100 Dollars ($833.33).

"III.   After the deduction of the foregoing bequests * * * I give devise and bequeath to my wife Oriola Wilson (Huston) one third in value of my property both real and personal which is to be in lieu of her dower and distributive interest in my estate.

"IV.   *I will and direct that all of the remainder of my estate be equally divided among my children.*

"V.   I nominate my son Robert L. Huston as Executor of this my last will and testament * * *.

"* * * signed * * * this 13th day of August A. D. 1904 at Winterset, Iowa.

"Z. T. Huston."

(Italics ours.)
In January, 1921, he made the following codicil:

"* * * On account * * * of the death of my said son, Robert L. Huston, I now and hereby * * * appoint my * * * son, Walter Huston, and Gaylord H. Huston, * * * as Executors of my said last will * * *.

"Witness my hand * * * this 31st day of January A. D. 1921.

"Z. T. Huston."

This action was brought by the administrator for the construction of said will. The administrator, Mary Huston Dabney, Earl C. Huston, and Taylor Huston, the surviving children of Z. T. Huston, contend that such surviving children are entitled to all of the remainder of the estate referred to in paragraph four of the will. They also claim to be entitled to the specific bequests given to Robert L. Huston and Walter Huston under paragraph two of the will.

The lower court held that Mary Huston Dabney, Earl C. Huston, and the heirs of Robert L. Huston and Walter Huston were each entitled to $833.33 as provided in paragraph two of the will.

The court also held that Mary Huston Dabney, Earl C. Huston, and Taylor Huston, surviving children of Z. T. Huston, were entitled to the entire remainder of decedent's estate referred to in paragraph four of the will. The court also held that Alice R. Johnson, Francis W. Huston, and Anna May Huston, widow and children, respectively, of Robert L. Huston, and Mrs. Maud Huston, widow of Walter Huston, acquired no interest in the remainder of decedent's estate.

From a judgment entered on the latter ruling, they appeal.

Appellees, the surviving children of decedent, contend that the provisions of paragraph four of the will which "directs that all the remainder of his estate be equally divided among his children," creates a class and that this class consists only of the *surviving children* of decedent, and that under this paragraph the heirs of Robert L. Huston and Walter Huston, the prede-

ceased children of Z. T. Huston, acquire no interest in the remainder of decedent's estate referred to in said paragraph four.

It is the well known rule of law in this and most other jurisdictions that unless a contrary intent is indicated by a will, a devise to a class includes only such members as are living at the time of the testator's death, when the will takes effect. This is the unanimous holding of the cases in Iowa, and the rule has been so often expressed, that it is hardly necessary to cite any authorities in support thereof; however, we cite the following: Downing v. Nicholson, 115 Iowa 493, 88 N. W. 1064, 91 Am. St. Rep. 175; Parish v. Welton, 194 Iowa 1274, 190 N. W. 947; In re Estate of Carter, 203 Iowa 603, 213 N. W. 392; Friederichs v. Friederichs, 205 Iowa 505, 218 N. W. 271.

In Downing v. Nicholson, 115 Iowa 493, loc. cit. 496, 88 N. W. 1064, 1065, 91 Am. St. Rep. 175, this court said:

"Since a will speaks from the day of the testator's death, the members of the class, where the devise is to a class, are prima facie to be determined upon the death of the testator. * * * But this is not an unyielding rule, even at common law. *The will itself may indicate a contrary intent, and if that be so this intent will be adopted and enforced.* * * * Under the common law rule, the members of the class to whom testator left his residue estate would be determined upon the day of his death; * * * but that, like all other rules on the subject, it must yield to the intent of the testator when that can be ascertained; for that is the polar star of all inquiry in such cases." (Italics ours.)

Appellants contend, however, that the intention of the testator is controlling; that this intention must be discovered by a reading of the entire will, and that if the entire will manifests an intention to include the heirs of the predeceased children, such intention must control.

The "intention of the testator being ever the polestar in the interpretation of wills, the object is always to discover that intention, as expressed in the will, under established and recognized canons of construction." Todd v. Stewart, 199 Iowa 821, loc. cit. 825, 202 N. W. 844, 845; In re Estate of Proctor, 95 Iowa 172, 63 N. W. 670; Boekemier v. Boekemier, 157 Iowa 372, 138 N. W. 493; Iowa City State Bank v. Pritchard, 199 Iowa 676, 202 N. W. 512; Brown v. Brown, 213 Iowa 998, 240 N. W.

910; In re Bunting's Estate, 220 Iowa 186, 261 N. W. 922; In re Flannery's Estate, 221 Iowa 265, 264 N. W. 68; In re Vail's Estate, 223 Iowa 551, 273 N. W. 107.

In re Estate of Proctor, 95 Iowa 172, loc. cit. 174, 63 N. W. 670, 671, this court said:

"No citation of authorities is needed in support of the rule that it is our duty to ascertain from the will the intent of the testator, and, when so ascertained, we must give effect to it, unless to do so will do violence to the law."

In Brown v. Brown, 213 Iowa 998, loc. cit. 1000, 240 N. W. 910, 911, we said:

"The purpose of construction is to ascertain and give effect to the intention of the testator. The will must be construed as an entirety, and effect given as far as possible to each provision."

In re Flannery's Estate, 221 Iowa 265, loc. cit. 271, 264 N. W. 68, 71, we said:

"The will must be taken by its four corners and the intent of the testator must be gathered from the entire will and all parts thereof must be construed and given force and effect, if possible, to determine what was the intent of the testator from the wording of the will itself."

In the case at bar, appellants concede the rule to be that where the will creates a devise or bequest to a class, the will speaks only from the time of the testator's death, and that the devise is, therefore, limited to the members of the class living at that time.

Paragraph four of the will provides:

"IV. I will and direct that all of the remainder of my estate be equally divided *among my children.*" (Italics ours.)

It is, therefore, conceded that this provision, if standing alone, would create a class, and in the absence of other provisions showing a different intent, the bequest given in paragraph four would be limited to the members of that class living at the time of testator's death.

Appellants contend, however, that a consideration of the entire will, taken in connection with the antenuptial contract,

clearly indicates that the bequest made in paragraph four of the will was not limited to his children living at the time of his death; but that a consideration of the whole will clearly manifests an intention to include the heirs of any predeceased member of that class. So the main question in this case is whether or not the language of the will manifests an intention to include the heirs of his predeceased children.

Section 11861 of the Code provides that:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

If, therefore, the terms of the entire will manifest an intention to give the remainder referred to in paragraph four to all the children of the testator *and the heirs of any who may have predeceased him,* such heirs should be included in the remainder referred to in paragraph four of the will.

The antenuptial contract hereinabove set out was introduced in evidence in this action. A casual reading of that contract clearly shows that when executed, it was the desire and intention of Z. T. Huston that all of his children, *including the heirs of those who may have predeceased him in death,* should participate in the remainder of his estate. Appellants, therefore, contend that the antenuptial contract which was clearly identified and admitted in evidence, *and which is referred to in the will,* and which, under paragraph two, shows that it was made in accordance with the terms of the antenuptial contract, should be considered in connection with the wording of the entire will, in determining the decedent's intention at the time of making the will.

Paragraph II of the will provides as follows:

"In accordance with the terms of an ante-nuptial contract * * * entered into on December 12, 1899, * * * between myself and Oriola Wilson I will and direct that there be first paid to each of my following named children viz: R. L. Huston, Mary I. Dabney, Walter Huston and Earl C. Huston the sum of Eight Hundred Thirty-Three and 33/100 Dollars ($833.33)."

In paragraph III he gives to his wife, Oriola Huston, one third of the balance of his estate.

In paragraph IV he "directs that all of the remainder of his estate be equally divided among his children."

The ante-nuptial contract, in accordance with the terms of which his will is drawn, provides inter alia as follows:

"* * * it is hereby agreed * * * that in case the party of the second part survives the party of the first part, that there shall be paid * * *

"To R. L. Huston Eight Hundred and Thirty-three and 33/100 dollars.

"To Mary A. Dabney Eight Hundred and Thirty-three and 33/100 dollars.

"To Walter Huston Eight Hundred and Thirty-three and 33/100 dollars.

"To Earl C. Huston Eight Hundred and Thirty-three and 33/100 dollars;

*and in case either of the above should die without wife or issue the share of such shall be equally divided among the surviving of them,* and in case of the death of either leaving a wife or heirs the share of any such * * * is to go to such wife or heirs in the manner provided by law.

"* * * *after the payment of the said amounts the* * * * *party of the second part is to have one third of all the remaining property* * * * *in full of her distributive share of his estate, and all of the remaining property of said first party, after the payment of the amounts aforesaid and after setting apart to the party of the second part her one third of the property remaining after making said payments shall be divided equally among all of the children and heirs at law of the said Z. T. Huston including those above named and all others that may be hereafter born* to the parties hereto, provided however that in case of the death of either of said heirs before the death of * * * Z. T. Huston, the share of any such shall go to its heirs as provided by law." (Italics ours.)

Appellants contend that as the will itself shows that it is made in accordance with the terms of the antenuptial contract executed just prior to their marriage, and as this antenuptial contract shows without dispute the disposition of the property desired to be made by the testator, such contract should be considered in construing the testator's last will and testament. It is unnecessary to hold that the antenuptial contract be consid-

ered a part of the will, but in our opinion it may be considered in construing testator's intention in making his will.

Appellees contend that paragraph four should be construed as if standing alone and that under its terms the testator created a class, and that under our rules of construction the benefits conferred thereby are limited to those members of the class living at the time of testator's death. This rule would apply if paragraph four be construed as standing alone, and without reference to the entire will.

The trouble with this contention, however, is that the rule contended for by appellees does not apply where a different intent is manifest from an examination of the entire will. In determining the intention of the testator, the entire will must be taken by its four corners and if, from such examination, it appears that it was decedent's intention to include the heirs of predeceased children, the general rule will not apply and the heirs of such children will be included. Friederichs v. Friederichs, 205 Iowa 505, 218 N. W. 271, and other cases hereinabove cited.

In determining the intention of the testator, evidence of extrinsic matters referred to in the will may be considered by the court in determining such intention. "A will may be construed in connection with writings * * * referred to therein." 69 Corpus Juris, 124, Sec. 1165; Murphy v. Black, 44 Iowa 176; Anderson v. Anderson, 181 Iowa 578, 164 N. W. 1042; McAllister v. McAllister, 191 Iowa 906, 183 N. W. 596; Bemis v. Fletcher, 251 Mass. 178, 146 N. E. 277, 37 A. L. R. 1471; Jennings v. Reeson, 200 Mich. 559, 166 N. W. 931; Ford v. Ford, 70 Wis. 19, 33 N. W. 188, 5 Am. St. Rep. 117.

In Anderson v. Anderson, 181 Iowa 578, 584, 164 N. W. 1042, 1044, this court quotes with approval the following language from Murphy v. Black, 44 Iowa 176:

"In the construction of wills, the intention of the testator is the first and great object of the inquiry, and all papers of a testamentary character must be taken and considered together, and therefrom the intention of the testator ascertained."

In McAllister v. McAllister, 191 Iowa 906, loc. cit. 915, 183 N. W. 596, 600, the court permitted a consideration of alterations in the will, made in the handwriting of the testator, in construing his intention. In that case this court said:

"By a reference to the will, as altered by the testator after

the death of his son and grandson, it will be observed that he clearly attempted to give all of his residuary estate to his wife. Of course, the changes in the will which are in the handwriting of the testator could not operate as a codicil, because not witnessed or executed with the formalities required by law. It has been held, however, that same might be taken into consideration for the purpose of ascertaining the intention of the testator. Matter of King, 97 Misc. 528, 163 N. Y. S. 405.''

In the present action the antenuptial contract was admitted in evidence, and, being a part of the evidence and a paper referred to in the will, it should be given consideration in its construction. This is a law action, and no appeal was taken by appellees from the action of the court in admitting it in evidence.

We are constrained to hold under the record in this case that a consideration of the entire will, in connection with the antenuptial contract *referred to therein, and in accordance with which the testator himself declared the will to be drawn,* clearly manifests an intention to include the heirs of the predeceased children in a distribution of the remainder of the estate referred to in paragraph four of the will.

For the reasons hereinabove set out, it is our conclusion that the lower court erred in holding that none of the appellants were entitled to any part of the remainder of decedent's estate. It necessarily follows that the judgment of the lower court must be and is hereby reversed.—Reversed.

HAMILTON, C. J., and ANDERSON, DONEGAN, PARSONS, and SAGER, JJ., concur.