GIONFRIDDO, EXTRX., ET, PLAINTIFF, *v.* PALATRONE, JR., ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 643882.   Decided January 17, 1964.

Mr. *Max S. Fishel*, for plaintiff.

Mr. *Leo E. Rattay*, for defendants, Frank Palatrone, Jr., and Beverly Palatrone Blaha.

*Mr. Joel M. Garver,* for Guardian ad Litem for Robert Lecate and Gayle Lecate.

ANDREWS, CHIEF REFEREE. This is a case involving abatement. It comes to this court on a petition by the executrix of Frank Palatrone's will for the construction of the will and related documents. Mr. Palatrone died on August 3, 1961.

The subject of abatement was treated extensively in an unreported opinion written by me in the case of *McArthur* v. *McArthur,* No. 605901, Probate Court, Cuyahoga County, August 1, 1961. As stated in Atkinson on Wills, Section 136, page 754 (2d ed. 1953) :

" 'Abatement' is the reduction of legacies on account of the insufficiency of the estate to pay testator's debts and other legacies."

And as said in 6 Bowe-Parker, Page on Wills, Section 53.1, page 201 (1962) :

"The term 'abatement' under modern statutes usually applies to the failure of legacies or devises due to insufficiency resulting from any cause."

See also, for similar definitions, *Ferris* v. *Jones,* 2 Ohio Opinions, 136, 1 Ohio Supp., 233 (Prob. Ct. 1935) ; *Harper* v. *Society for Crippled Children,* 81 Ohio Law Abs., 91, 158 N. E. (2d), 747 (Com. Pl. 1959).

Putting the definition into laymen's language, we may say that abatement means simply that there is not enough to go round. For this reason the beneficiaries under the will, or some of them, must suffer a loss, in that they will not get all that was given to them by the terms of the will. Indeed, in some instances, depending upon the particular circumstances, one or more of the beneficiaries may get nothing.

The disappointing thing about abatement is that ordinarily neither the testator nor the beneficiaries expect it. If the testator bequeaths $10,000 to his cousin, John Jones, and $5,000 to

his uncle, Harry Smith, it is not likely to occur to these people that conditions may arise under which the amount eventually received may be substantially less than the amount called for by the will. Even greater frustration arises when the bequest or devise is "specific," which, as will be seen, is the situation in the present case. As explained in 6 Bowe-Parker, Page on Wills, Section 48.3 (1962):

"A specific legacy is a gift of a specific thing, * * * which is so described by the testator's will as to distinguish it from other articles of the same general nature. A specific legacy differs from a general legacy in that it is not intended by testator to be paid out of his estate generally, but is to be paid solely by delivering to the beneficiary the specific thing given by will, as distinguished from a designated value, quantity, and the like."

The Supreme Court of Ohio has defined the term in the same way. *In re Estate of Mellett*, 162 Ohio St., 113, 121 N. E. (2d), 7 (1954).

Naturally, a devise of realty, properly identified, is likewise specific. 6 Bowe-Parker, Page on Wills, Section 48.9, p. 33 (1962).

Where, as in the present case, the estate is without cash, and the bequests and devises are all specific, it is obvious that the beneficiaries must receive less than the will contemplated. Realization must be less than anticipation.

In these unpleasant circumstances, there is a tendency among beneficiaries to express disbelief and dismay. After all, they reason, the testator expressed very clearly what he wanted me to have, and so I should have it. There is likewise a tendency to think that the other fellow should bear the loss.

The Ohio legislature has set forth how the loss is to be borne. Section 2107.54, Revised Code, reads as follows:

"When real or personal property, devised or bequeathed, is taken from the devisee or legatee for the payment of a debt of the testator, the other devisees and legatees must contribute their respective proportions of the loss to the person from whom such payment was taken so that the loss will fall equally on all the devisees and legatees according to the value of the property received by each of them.

"If, by making a specific devise or bequest, the testator has exempted a devisee or legatee from liability to contribute to the payment of debts, or if the will makes a different provision for the payment of debts than the one prescribed in this section, the estate must be applied in conformity with the will.

\* \* \*

"This section does not affect the liability of the whole estate of the testator for the payment of his debts. This section applies only to the marshalling of the assets as between those who hold or claim under the will."

If it be thought that this section completely exempts specific devisees and legatees from contributing to the payment of debts, we have only to look at the last clause, which affirms the liability of the whole estate for the payment of debts. Considering the statute as a whole, it is clear that general legatees and devisees must first contribute to the loss, as against specific legatees and devisees. In that sense, specific devisees and legatees are exempt. But if the fund from the general devises and bequests is insufficient to pay the debts, it is equally clear that the specific devisees and legatees must contribute. That was the situation in *McArthur* v. *McArthur*, previously referred to. In the *McArthur case*, we quoted from *Glass* v. *Dunn*, 17 Ohio St., 413 (1867), in which the court pointed out that the statute does not actually exempt specific devisees and legatees from contribution, but merely puts them in a preferred position as opposed to general devisees and legatees.

We held also in *McArthur* that specific devises and bequests abate together. In other words, devises are not favored over bequests. A careful reading of Section 2107.54, Revised Code, leads to this conclusion. And we cited *Huntington National Bank* v. *Roan*, 10 Ohio Law Abs., 500 (App. 1931), so holding, and also 42 A. L. R., 1519 (1926), stating this to be the majority view, and setting forth in the following language what the annotator calls the "obvious" reason:

"Where a testator gives specific chattels or personal property, and also a specific devise of real estate, the courts will not, in the absence of other evidence, presume that he intended to favor one class over the other. He intended that the legatees should have the legacies, and equally that the devisees should

have the devises. And if both are liable for the debts, the most logical rule is that they should contribute and abate ratably."

Let us apply these principles to the will of Frank Palatrone. The will was executed on March 15, 1961.

By Item I he directs that all his just debts, funeral and burial expenses be first paid out of his estate as soon as practicable after his decease.

Item II incorporates by reference an antenuptial agreement dated April 11, 1959, and continues with the following:

"In conformity with the provisions contained in said agreement, I hereby:"

Thereafter, as (a) in Item II, the testator devises to his two children, Frank, Jr., and Beverly, "the residence property known as 1401 Sunview Road, Lyndhurst, Ohio, share and share alike, absolutely and in fee simple."

In (b) he gives to his two children, named above, his Ford automobile, in equal shares.

I will quote paragraphs (c) and (d) in full, because of their importance.

(c) "The residence property known as 28600 Belcourt Road, Pepper Pike, Ohio, which I now own jointly with my wife, Marjorie L. Palatrone, shall be sold and I hereby give and bequeath to my wife, Marjorie L. Palatrone, the sum of Eleven Thousand Two Hundred Fifty Dollars ($11,250.00) from the proceeds of such sale, as this amount was contributed by her towards the purchase of my undivided one-half interest;

(d) "Any sum realized from the sale of my one-half interest over and above the said amount of Eleven Thousand Two Hundred Fifty Dollars ($11,250.00), I give and bequeath to our five children, Frank Palatrone, Jr., Beverely Palatrone, Carole Henshaw, Robert Lecate and Gayle Lecate, in equal shares."

By Item III the testator appoints his wife, Marjorie L. Palatrone, to be executrix.

It is apparent that the devise of the Sunview Road property and the bequest of the automobile are specific. So is the gift of one-half of the proceeds of the sale of the Belcourt Road property. This is not a gift of $11,250.00 payable out of the general assets of the estate. It is a gift payable from the proceeds of the sale, and obviously is limited to testator's one-half interest in the property. In other words, if his one-half in-

terest brought $11,250.00, his widow was to receive all of it; if the one-half interest brought $12,250.00, the extra $1,000 would go to the five named children. Unfortunately, the net proceeds were only $8,857.49. This amount constitutes the bequest. Indeed, the widow does not contend that she is entitled to more.

Inasmuch as the gift is payable only out of the fund arising from the sale of Mr. Palatrone's half interest in the property, it is specific. 6 Bowe-Parker, Page on Wills, Sections 48.5, 48.7 (1962).

We are then faced with an unfortunate situation. There are three specific bequests or devises, and these are the only sources for the payment of debts and costs of administration. Under the mandate of Section 2107.54, Revised Code, they must all share in the loss, in the proportions indicated in the statute, unless "the will makes a different provision for the payment of debts than the one prescribed in this section * * *;"

Does the will make such a "different provision"? I think not. There is no language even vaguely relating to abatement. The mere recitation that his wife contributed $11,250.00 toward the purchase of the Belcourt Road property cannot be twisted into a direction that the son and daughter must stand all the loss. This is particularly true when we consider that the widow is entitled only to the actual proceeds from the sale of her husband's undivided half. Our position is strengthened by the direction in Item I of the will that the debts, funeral and burial expenses be paid *out of testator's estate.* (Emphasis added.) There is nothing here to suggest "a different provision for the payment of debts" than the one prescribed by the statute.

Thus far, then, we have a typical abatement situation. And, consistent with my previous observation that a beneficiary is likely to regard the whole devise or bequest as his, overlooking the possibility that some of it may be needed to pay debts, Mr. Palatrone's widow, as executrix, paid to herself individually, the $8,857.49 proceeds from the sale of testator's one-half interest in the Belcourt Road property; and her first partial account, showing this payment, contains the notation "as per Will." Parenthetically, the payment was made under advice

of counsel, and I have ordered that the funds be transferred back to the account of the executrix pending the outcome of this litigation.

If there were nothing further to the case, we could stop here and order contribution in accordance with Section 2107.54, Revised Code. But there are other factors to be considered before we reach a decision.

First of all, as previously noted, the will incorporates an antenuptial agreement, which, therefore, becomes part of the will and must be interpreted with it. Counsel do not treat the antenuptial agreement as incorporated in the will, but whether it is incorporated or not is of no importance, for even if not incorporated, it is referred to in the will and may be considered in construing the will. 4 Bowe-Parker, Page on Wills, Section 32.4, page 241 (1961); *In re Huston*, 224 Iowa, 420, 275 N. W., 149 (1937), citing numerous authorities. And counsel agree that the antenuptial contract remained in effect until Mr. Palatrone's death.

The antenuptial agreement was executed by Frank Palatrone and Marjorie L. Lecate (subsequently Mrs. Palatrone) on April 11, 1959. It is necessary to set forth the agreement in some detail in order to obtain a proper understanding of it. I will try to condense as much as possible.

The agreement recites that the parties contemplate marriage with each other and that the agreement shall not become operative until the solemnization of the marriage.

In the preamble, certain items of property are listed as owned by Frank Palatrone. Among these are the residence at 1401 Sunview Road, Lyndhurst, Ohio, and an automobile. These are the two items which Mr. Palatrone subsequently left to his two children in his will. Two other items, consisting of about $2,000 in cash and $300 in United States Savings Bonds, play no part in this liltigation. Evidently they were disposed of by the testator before his death.

The property listed as owned by Marjorie L. Lecate consists of a residence at 1412 Ford Road, Lyndhurst, Ohio; cash of approximately $63,000; stocks of the value of approximately $390; United States Savings Bonds of the value of $4,500; and an automobile.

Immediately following the enumeration of the property, appears the following:

"WHEREAS, the parties have mutually agreed that the survivor of the parties hereto shall receive no part of the share of the foregoing assets owned by each party;

"NOW, THEREFORE, IN CONSIDERATION of said marriage and of the covenants herein contained, each party hereto agrees to execute a Will leaving his or her respective assets hereinbefore listed to his or her now living children in equal shares."

This rather restrictive language is followed by two liberalizing paragraphs.

"It is further agreed that each party may freely sell or otherwise dispose of any and all of his or her own property, now owned or hereafter acquired, by gift, sale or deed during life, or by Last Will and Testament.

"On the death of either party, all of his or her property, real or personal which shall not have been disposed of during life, or by Last Will and Testament, shall descend to, vest in and be distributed to such person or persons as would be entitled thereto by the statute of descent and distribution of the State of Ohio then in effect had the surviving party died during the life of either party."

Although there is some inconsistency in the quoted paragraphs, it is clear to me that they give each party the right to dispose of his or her property, and that neither the Palatrone children nor the Lecate children have any claim to property so disposed of. Indeed, the contrary was not pressed in argument, although counsel for the Palatrone children did contend in his brief that the bequest to the widow is void by virtue of the antenuptial agreement. Of course, such a contention cannot be upheld, for even if the contract prohibits the parties from disposing of the items listed, the subject matter of Mr. Palatrone's bequest, i. e., the proceeds of the sale of his interest in the Belcourt Road property, was no part of the property listed in the contract in his name.

The next three paragraphs of the antenuptial agreement are as follows:

"That, each party is hereby barred from any and all rights,

interest or claims by way of dower, inheritance, descent and distribution, allowance for twelve (12) months support, right to reside in the mansion house, and all right or claim as widow, widower, heir, distributee, survivor or next of kin, and all other right or claim whatsoever in and to the estate of the other, whether real or personal, either now owned or hereafter acquired which may in any manner arise or accrue by virtue of said marriage.

"Except as hereinafter provided (the proviso is inapplicable to this case) each party hereto does hereby release and relinquish to the other, and to the heirs, executors, administrators, devisees, legatees and assigns of the other, all rights, interests or claims of dower, inheritance and to a distributive share either as widow, widower, heirs, survivor, distributee or next of kin in and to all the estate of the other, whether now owned or hereafter acquired, and all claims or interest to an allowance for twelve (12) months support, or to reside in the mansion house, or all other claims whatsoever which may in any manner arise or accrue by virtue of said marriage.

"Each party hereby waives any right which he or she may have to administer the estate of the other upon the death of either party."

Three problems are presented by the last quoted paragraphs, each of which may be quickly disposed of.

1. Does the release of all rights in the testator's estate nullify the bequest to the widow of the proceeds from the sale of testator's interest in the Belcourt Road property? Counsel for the Palatrone children apparently contends in his brief that it does. The law is against him. See 117 A. L. R., 1001 (1938); 53 A. L. R. (2d), 475, 477 (1957); Lindey, Separation Agreements and Ante-Nuptial Contracts, 782, 816, 824 (1961); *Bartle* v. *Bartle*, 121 Colo., 388, 216 P. (2d), 649 (1950); *First Nat. Bank* v. *Miley*, 3 N. J. Super., 348, 65 A. (2d), 553 (1949); *In re Paulson's Will*, 254 Wis., 258, 36 N. W. (2d), 95 (1949). See also the following Ohio cases, which, however, are not on all fours with the instant case: *Bowen* v. *Bowen*, 34 Ohio St., 164 (1877); *Walter* v. *Pugh*, 30 Ohio Opinion, 561 (C. P. 1945).

After all, each spouse is relinquishing merely the rights given by law in the estate of the other spouse. It would be

illogical to hold that such a relinquishment is intended to prohibit the husband from voluntarily making a bequest or devise to his wife, or vice versa. I hold that the bequest from Mr. Palatrone to his widow is valid.

2. Does the clause whereby each party waives any right to administer the estate of the other nullify the appointment of plaintiff as executrix? This is similar to the problem just considered, and the answer is the same for the same reason. Again, the relinquishment of a right given by law should not and does not interfere with a testator's right to nominate his wife for appointment as executrix of his will. See, as example, *Re Estate of Maddux*, 138 Cal. App., 430, 32 P. (2d), 392 (1934); *Re Estate of Forrest*, 43 Cal. App. (2d), 347, 110 P. (2d), 1023 (1941). Section 2113.05, Revised Code, is in harmony with this conclusion. The pertinent part of it reads:

"When a will is approved and allowed, the probate court shall issue letters testamentary thereon to the executor named in such will, if he is suitable, competent * * *"

We need not determine the answer where the agreement specifically waives the right to serve as executor. The antenuptial agreement before us does not go that far. I hold that the appointment of Mr. Palatrone's widow as executrix was valid.

3. The third problem arises as the result of an entry in the inventory and appraisement, "Property exempted from administration, $2,500.00." Presumably this refers to the wife's statutory right to select certain property as exempt from administration. Section 2115.13, Revised Code. Without doubt, under the terms of the antenuptial agreement the widow has relinquished this right, and I so hold. See 28 Ohio Jurisprudence (2d), Husband and Wife, Section 77 (1958); *Troha v. Sneller*, 169 Ohio St., 397, 8 Ohio Opinion (2d), 435, 159 N. E. (2d), 899 (1959).

Here end the problems presented by the antenuptial agreement.

Shortly after the signing of the antenuptial agreement, Frank Palatrone and Marjorie Lecate were married.

On January 15, 1960, they entered into a separation agreement, but later became reconciled, and counsel concede that by reason of the reconciliation, this separation agreement is of no effect in these proceedings.

On May 20, 1960, Frank A. and Marjorie L. Palatrone entered into an agreement with the then owner to purchase the property at 28600 Belcourt Road, Pepper Pike, Ohio, for $56,500, of which $2,000 was paid down, and $20,000 was to be deposited in escrow on or before July 1, 1960. The balance, $34,500, was to be financed by a mortgage. The premises were to be conveyed to Frank A. and Marjorie L. Palatrone on or before July 1, 1960, and were so conveyed, although the exact date is not in evidence.

Mrs. Palatrone (now Mrs. Gionfriddo) asserts that the purchase was made entirely with her funds, and that her husband contributed nothing toward the purchase. Evidence was introduced to this effect, some of which was immaterial and some incompetent. However, documents signed by Mr. Palatrone admit that Mrs. Palatrone paid for the property, and they are competent evidence before this court as declarations against interest. These documents are an agreement executed on the same day as the will and a separation agreement dated July 2, 1961, both of which will be further referred to. For that matter, the will itself contains a recital that Mrs. Palatrone paid $11,250 for the purchase of Mr. Palatrone's undivided one-half interest in the property. There appears to be a discrepancy of $500 between the cash called for by the offer of purchase and the amount paid, but the discrepancy has no bearing upon this case.

Regardless of the fact that Mrs. Palatrone's money paid for the property, the conveyance, as already mentioned, was made to both Frank and Marjorie Palatrone. In the absence of evidence to the contrary, this results in a gift from the wife to the husband of an undivided one-half interest in the property. See the excellent annotation in 43 A. L. R. (2d), 917 (1955). There is no competent evidence in connection with the Belcourt Road purchase to rebut the presumption of gift. On the contrary, what evidence there is on the subject tends to confirm the presumption. When asked why two of her bank accounts were transferred into the joint names of Mr. Palatrone and herself, Mrs. Gionfriddo testified, "We were going to buy a home together." (T. 63, 64). The home referred to was undoubtedly the Belcourt Road property. She also testified that the monthly payments were made from a "mixture of funds" which she

and Mr. Palatrone had. (T. 40.) She stated further that Mr. Palatrone planned to sell his home in order to reduce the mortgage, although this was never done. (T. 68.) Moreover, during the administration of the estate, Mrs. Gionfriddo, as executrix, has treated an undivided one-half interest in the property as part of the estate. I hold that the conveyance to Mr. and Mrs. Palatrone resulted in each becoming the owner of an undivided one-half interest in the Belcourt Road property.

As already noted, under the terms of the antenuptial agreement each party was given the power freely to dispose of any or all of his or her own property by gift or sale or otherwise. This language is broad enough to include a gift from one spouse to the other. Under a similar antenuptial provision, the Supreme Court of Ohio held that there was nothing in the agreement to prevent the husband from being a donee. *Hardy* v. *Van Harlingen*, 7 Ohio St., 209 (1857). The same is true in the present case.

The next occurrence of importance was the execution of Mr. Palatrone's will on March 15, 1961. I have already discussed the will at some length. On the same day, Mr. and Mrs. Palatrone executed an agreement about the Belcourt Road property. The agreement is not mentioned in the will, and by no stretch of the imagination can be regarded as incorporated therein by reference. In fact, since the agreement refers to the wills of both Mr. and Mrs. Palatrone, it presumably was executed subsequently, and counsel for Mrs. Gionfriddo so states.

By this document, Mr. and Mrs. Palatrone agree to join in the sale of the Belcourt Road property in the event of the death of either, for the purpose of carrying out the terms of the antenuptial agreement "and to carry out the terms of the respective Wills of the said parties dated March 15, 1961." The agreement then states that it is the intention of the parties that from the profits of the sale, Mrs. Palatrone shall first receive $22,500, the amount contributed by her from her own moneys toward the purchase of the property, the balance, if any, "to go to the children of the said parties as in their respective Wills."

I see nothing in the above agreement attempting to affect

Mr. Palatrone's will or the ownership of the Belcourt Road property. In fact, the expression of the purpose to carry the wills into effect would seem to be a recognition of Mr. Palatrone's ownership of an undivided one-half interest in the property. Otherwise, the language would be meaningless. The agreement enables the whole property to be sold, instead of only the undivided half owned by the party first to die, thus aiding in the administration of the estate.

If the clause relating to the intention of the parties conflicts with the will, I am obliged to disregard it as incompetent extrinsic evidence. *Emery* v. *Haven*, 67 N. H., 503, 35 A., 940 (1894); *Shanley* v. *Shanley*, 34 App. Div., 172, 54 N. Y. Supp., 652 (1898); *Beckwith* v. *McAllister*, 165 S. C., 1, 162 S. E., 623 (1932); *Bartlett* v. *Terrell*, 292 S. W., 273 (Tex. Civ. App., 1927). And see 94 A. L. R., 26 (1935); 4 Bowe-Parker, Page on Wills, Section 32.9 (1961).

I have already pointed out that under Section 2107.54, Revised Code, any change from the statutory rules for abatement must be made by the will itself. Thus, the agreement of March 15, 1961, can have no effect in changing the abatement rules, even assuming that it attempts to do so, which I do not think it does. It seems obvious that the parties to the agreement were not thinking about what should be done if there was a shortage of funds.

It is apparent from the above, that the agreement of March 15, 1961, is of no significance in the solution of the present problems, except that, as previously observed, one of its recitals does constitute an admission that Mrs. Palatrone paid for the property.

At this point we are still where we have been all along. Mr. and Mrs. Palatrone each owned an undivided one-half interest in the Belcourt Road property, and Mr. Palatrone's will left to his widow the proceeds from the sale of his half. The will contains nothing indicating an intention to change the statutory rules relating to abatement.

But on July 2, 1961, Mr. and Mrs. Palatrone executed a second separation agreement. Counsel for Mrs. Gionfriddo conceded that the separation agreement has no bearing on the case except to show intent. In his words, "The only thing before

this Court, as I see it * * * is the interpretation of the intent of the will and the separation agreement as to how we pay the bills.'' (T. 16.) In other words, counsel, in effect, takes the position that the separation agreement may be looked to for the purpose of seeing whether it contains any directions on the subject of abatement. That is the only possible meaning to be placed upon his statement. He does not suggest that the separation agreement transferred Mr. Palatrone's interest in the Belcourt Road property back to his wife. He concedes that Mr. Palatrone owned a half interest at the time of his death. For instance, at the hearing he said that ''there is an estate probated here in this Court for two pieces of property and an automobile.'' (T. 15.) Obviously, the two pieces are the Sunview Road property and the undivided one-half interest in the Belcourt Road property. Furthermore, counsel stated that ''this home (meaning the home on Belcourt Road) was ordered to be sold, which was sold, and the proceeds turned over to the widow as Executrix, and then turned over to herself as the will recited, as we claimed.'' (T. 15.)

Moreover, the one-half interest in the Belcourt Road property was included as part of Mr. Palatrone's estate in the documents filed with this court in connection with the administration of the estate, as, for example, the application for letters testamentary and the inventory and appraisement. And in the first partial account of the executrix, filed April 19, 1963, the following items appear, dated January 31, 1962:

|  | Amount Received | Amount Paid Out |
|---|---|---|
| Proceeds sale of one-half interest in Residence at 28600 Belcourt Rd., Pepper Pike, O. | $ 8857.49 |  |
| Paid to Marjorie Gionfriddo, (formerly Marjorie L. Palatrone) as per Will |  | 8857.49 |

There is also a receipt dated April 18, 1963, signed by Mrs. Gionfriddo for the above amount, the receipt containing the words ''distribution proceeds sale 28600 Belcourt Road.''

More definite evidence that Mrs. Gionfriddo and her at-

torney regarded the property interest in question as belonging to Frank Palatrone, and as being a part of his estate, can scarcely be imagined. Mrs. Gionfriddo looked to the sale of her late husband's interest in the property as the source from which she would get back the money she had put into the purchase. It is significant that she did not claim as a creditor of the estate, and if she had, she would have lost, for there is not an iota of evidence that her husband was regarded as her debtor for the amount paid by her.

We come back again, then, to the original problem. Who is to suffer the loss arising from the lack of funds? Counsel for Mrs. Gionfriddo claims that we may look to the separation agreement as well as the will in order to determine the testator's intention. But as I have pointed out before, Section 2107.54, Revised Code, requires that any change from the statutory rules for abatement must be provided for in the will. After all, a person cannot modify or change a will by subscribing to some other agreement. Wills are changed by codicils or new wills. If Mr. Palatrone wished to free his widow's legacy from being reduced in case of lack of funds, he should have done so in that manner. The will contained no provision about abatement. I am not at liberty to change the will on the basis of a subsequent agreement. See my previous remarks and the citations in connection with the effect of the agreement of March 15, 1961. Anyhow, the separation agreement of July 2, 1961, has nothing to do with abatement. It purports to relinquish any rights of each spouse in the property of the other, and provides for the execution of quitclaim deeds in the event that a court grants a divorce and approves the property settlement contained in the contract. And, as already noted, it is not contended that the agreement affected Mr. Palatrone's undivided one-half interest in 28600 Belcourt Road.

I can well appreciate the chagrin which a person suffers when a bequest to her is reduced because of a lack of funds for the payment of debts and expenses of administration. But it seems to me that the Ohio statute is eminently fair in that it apportions the loss ratably unless the testator has provided otherwise in his will. When Mrs. Gionfriddo caused the conveyance of the property to be made to both herself and her hus-

band, both of them owned it. Concededly, nothing has occurred to change that ownership. And when Mr. Palatrone bequeathed to his widow the proceeds from the sale of his half interest, this bequest, like any other of the same class, was subject to the statutory abatement or reduction if there was not enough to go round. The alternative would be to put the whole loss on the children. There is nothing in Mr. Palatrone's will indicating an intent to do that.

The fact that a person does not fully comprehend the legal incidents of what she does or fails to do, and that her expectations are thereby defeated, is regrettable, but cannot serve to alter those legal incidents. See, for example, *Ferguson* v. *Stokes*, 269 S. W. (2d), 655 (Mo. 1954), in which the court pointed out that the person involved was subject to the legal incidents of an estate by the entirety even though she may not have understood them.

I hold that the bequest of the automobile, the devise of the Sunview Road property, and the bequest of the proceeds from the sale of testator's undivided one-half interest in the Belcourt Road property abate ratably in accordance with Section 2107.54, Revised Code. The statute specifies that the loss is to "fall equally on all the devisees and legatees according to the value of the property received by each of them." In the case of the automobile and the Sunview Road property, the "value" shown on the inventory and appraisement will be used. In the case of the bequest to Mrs. Palatrone, the value is the amount actually received by her from the sale of Mr. Palatrone's half interest, namely, $8,857.49.

When all the debts and costs of administration have been figured up, including the debts already paid, a computation should be made showing the amount for which each legatee and devisee is liable under the statute. Against the amounts charged to Frank Palatrone and Mrs. Blaha should be credited the amounts advanced by them. And against Mrs. Gionfriddo's share of the debts and expenses of administration should be credited the amount allowed her by the court as an executor's fee.

The suggestion was made that Frank Palatrone, Jr., and Mrs. Blaha paid certain debts amounting to $2,439.42 out of the

goodness of their hearts, the inference being that they are not entitled to credits for the amount paid by each. There is absolutely no evidence to show this. In fact, the evidence is the other way. Counsel for Mrs. Gionfriddo told Frank, Jr., and Mrs. Blaha that they would have to pay the bills to avoid the sale of the Sunview Road property, and that is why they did so. (T. 75, 80, 82, 84, 100.) His theory undoubtedly was that only the Sunview Road property was subject to abatement. Moreover, the first partial account refers to the payments as "Advancement by children of Deceased toward payment of debts." It would be improper not to allow a credit to each of the children for the amount advanced.

The conclusions reached will result in a proper application of the law of Ohio with reference to abatement.